[Civ. No. 32049. Second Dist., Div. One. Aug. 27, 1968.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v. ALLEN'S GROCERY CO., INC., Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Peyton H. Moore, Jr., Assistant City Attorneys, Richard Laskin and Norman L. Roberts, Deputy City Attorneys, for Plaintiff and Appellant.

Fadem & Kanner and Gideon Kanner for Defendant and Appellant.

FOURT, J.—This appeal involves a condemnation proceeding.

In an action filed by the City of Los Angeles (hereafter referred to as City), on May 14, 1965, said City sought to condemn (among other parcels) a particularly described parcel of land upon which was erected a grocery market building; also included in the action was a parcel of land which was owned by Allen's Grocery Co., Inc., and which was separate and apart from the parcel upon which the building was located. The land was to be taken for a grade separation project on Reseda Boulevard in the Northridge area of the San Fernando Valley. The store building and the land upon which it was located were owned by Carl and William Dentzel and leased by Allen's Grocery Co., Inc. (hereafter referred to as Allen) which latter operated an independent food market on the premises. The parcel owned by Allen was in the same area and a dwelling house was located thereon. There is no dispute between the City and the Dentzels.

In a nonjury trial the court found that the City and the Dentzels had disposed of their interests by stipulation, further that there was an order of possession issued on August 20, 1965, providing in substance that it would be effective 20 days after service. The order of possession was served October 19, 1965. By agreement the effective date was postponed until November 11, 1965. On December 7, 1965, the City demanded possession by Friday noon, December 10, 1965. Allen on December 10, 1965, tendered the keys to the premises to the City and apparently Allen at the same time refused to remove the movable items from the store. On December 10, 1965, the City secured a Writ of Assistance and the premises were delievered into the City's possession on December 17, 1965.

Allen at the trial claimed damages for the trade fixtures and operating equipment pertaining to the grocery business, the stock in trade (*i.e.*, the foods and other merchandise offered for sale on the premises), and further it claimed damages by reason of the alleged severance of Allen's estate in the property (the land belonging to Dentzels) upon which the store building was located from the parcel of residential property owned by it, in fee simple, to the rear and north of Dentzel's property.

The judge found upon substantial evidence, among other things, that Allen as of the date of the issuance of summons (May 14, 1965) was a lessee of the premises on a month-to-month basis and operated thereon a retail food market; that certain particularly described units, certain shelving, certain cases and signs were permanently affixed to the realty and that pursuant to a stipulation were of the value of $22,500; that certain other particularly described items were not permanently affixed to the realty and that Allen was not entitled to any compensation therefor; that the stock in trade was not affixed to the realty and Allen was not entitled to compensation from the City for the same; that the lot owned by Allen was not contiguous to the lot of Dentzels; that the lot was occupied and used as a single family residence and that Allen was not entitled to any damages for the reduction in value, if any, of such lot. Further the court found that the Writ of Assistance was proper and that the City had expended $6,082.87 as expenses in removal and storage costs (of the removable items); that Allen was not entitled to costs of removal and storage of the noncompensable items of personal property; that the City was entitled to an offset of a stipulated amount attributable to the removal and storage of the items of equipment and stock in trade found to be noncompensable; that Allen was to be paid $22,500, being the fair market value of the items found to be permanently affixed to the realty, plus interest, less the sum of $3,800 allowed to the City as an offset. Conclusions of law and judgment followed the findings of fact.

On November 22, 1966, Allen filed a notice of appeal from the entire judgment. On December 21, 1966, the City filed a notice of appeal from that part of the judgment which was in favor of Allen.

At the trial the facts were established by the testimony of Lloyd Allen, the principal officer of Allen's Grocery Co., Inc., and by exhibits. A résumé of some of the evidence is as follows: by lease dated September 5, 1951, Dentzels as lessors and Lloyd Allen as lessee entered into a 10-year lease of real property, to commence upon the completion of construction of a retail food store building. The building so constructed was designed for a grocery store but could easily be altered to accommodate for other uses. The store equipment and its location on the premises was determined prior to the construction of the building. The lease became effective in February 1952.

The grocery equipment was delivered and placed after the building was completed and possession was delivered to Mr. Allen. The lease expired February 1962. Two one-year extensions were later executed. After February 1964 the tenant occupied the premises as a month-to-month tenant, perhaps as indicated by the judge in a letter to counsel, because of the contemplated or possible condemnation action. The lease had made certain provisions with reference to the movable and trade fixtures.

We are persuaded that the judgment of the trial court was correct and proper. The City did not step into the shoes of Allen as its landlord. The City was a condemnor and Allen a condemnee. It is appropriately stated in *People* v. *Klopstock*, 24 Cal.2d 897, 903 [151 P.2d 641]: " 'The State's appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land whether classified as buildings or as fixtures. . . . *Trade fixtures are regarded as personalty as between the tenant and owner [of the land]* so far as the right of removal is concerned, but as between the tenant and the condemning party they are regarded as a part of the realty for the purpose of making compensation, so long as they remain fixtures, and where by the exercise of the right of eminent domain they are destroyed or injured in value, damages may be recovered therefor by the tenant.* The award made for such fixtures in condemnation proceedings therefore belongs to the tenant. . . .' " What may constitute personal property where the contest is between landlord and tenant may be real property where the claimants stand in the relationship of buyer and seller or condemnor and condemnee.

 The testimony and evidence and the inferences therefrom are such that the court could reasonably conclude that the items declared to be affixed fixtures were in fact such and that the City should be compelled to pay for the same.

In considering the appeal of Allen it is evident that it would have this court extend very considerably the present law with reference to condemnation actions. Allen insists that by reason of the City's taking of the real property and the affixed fixtures it was condemned out of existence as a business and that it should be compensated for its personal property even though not affixed to the real property. In short, Allen in effect asks this court to adopt a constructive annexation doctrine and hold that all of the inventory and equip-

ment of the store are fixtures, and that the City condemned the entire business so to speak and therefore should pay for it.

Substantially the same problem was disposed of by this court in *City of Los Angeles* v. *Siegel* (1964) 230 Cal.App.2d 982 [41 Cal.Rptr. 563] In that case it is said at pp. 984-986: "Appellant contends that the law as reflected by the judicial decisions of this state should be expanded to require that compensation be made to a condemnee for those items of personal property which are severed by an action of condemnation from their integrated purpose and rendered essentially valueless. He advances what he calls the doctrine of constructive annexation and urges that this doctrine should be adopted as applied to the facts in the within case. It is his position that, where severance damages apply to integrated realty, constructive annexation applies to integrated personalty. He argues that where the property involved is a complex of both personalty and realty the allocation of the burden of diminishment in value must be placed upon the condemnor; that constructive annexation is not a special application of the law for fixtures but the legal device whereby the burden of the diminishment caused by severance is properly allocated to the condemnor.

"The cases relied upon by appellant generally relate to situations involving manufacturing or industrial buildings and appurtenances. He appears to cite no specific authority supporting his position as applied to the facts in the within case. Here the court heard evidence regarding the nature of the annexation to the premises as well as the intent of the parties making the annexation at the time the personalty was acquired and used. On conflicting evidence the court concluded in its findings that certain items only were affixed to the realty and therefore compensable in damages. These items were covered by the jury's verdict and no complaint is made as to the quantum of the award.

"The trial court followed the established legal test in California for determining what are and what are not fixtures. Section 1248, Code of Civil Procedure, provides that in condemnation suits: 'The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceeding, and thereupon must ascertain and assess: 1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, . . .

"As said in *City of Los Angeles* v. *Klinker*, 219 Cal. 198,

205, 206 [25 P.2d 826, 90 A.L.R. 148] : ' "Fixtures upon the property taken must be valued and paid for as part of the real estate, and any depreciation in the value of fixtures upon the part not taken is to be taken into consideration, the same as damage to the soil itself.'' [Citation.]

" ' ' "Where land is condemned for public uses, the value of buildings or other improvements and fixtures on the land must be considered in determining the owner's compensation.'' [Citation.]

" ' ' ' "When fixtures become part of the realty, if the land on which the building stands is taken in whole or in part for the public use, the owner is entitled to have the fixtures considered in determining the amount of his compensation.'' [Citation.] '

" . . . . . . . . . . . .

"In 1957, subsequent to the decision in *City of Los Angeles* v. *Klinker, supra,* 219 Cal.198, which concerned condemnation of the Los Angeles Times industrial newspaper plant, the Legislature saw fit to broaden the scope of the foregoing rules by enactment of section 1248b, Code of Civil Procedure: 'Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation.'

"Appellant makes no contention that the equipment here in question and used in the restaurant and former liquor store falls within the classification of use for manufacturing or industrial purposes.''

The fact is, in this case, that the City was careful not to condemn anything but the real property involved—it did not take possession of any equipment or inventory of Allen excepting by the Writ of Assistance. It needs no authority to state that the personal property owned by a condemnee need not be purchased by a condemnor unless it (the condemnor) is so minded. In short, the taking of real estate does not affect the ownership of personal property kept on the premises taken, but not permanently affixed thereto. The owner of the personal property is entitled to remove said personal property, and evidence of the value of the unsold and removed stock in trade retained by the tenant after the expiration of the leasehold is not a proper element of damages under the circumstances.

In *Mitchell* v. *United States,* 267 U.S. 341 [69 L.Ed. 644, 45

S.Ct. 293] Justice Brandeis for the court said at pp. 344-345 [69 L.Ed. at pp. 647-648] : ▮ "The special value of land, due to its adaptability for use in a particular business, is an element which the owner of land is entitled, under the 5th Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain. *Mississippi & R. River Boom Co.* v. *Patterson,* 98 U.S. 403, 408 [25 L.Ed. 206, 208] ; *New York* v. *Sage,* 239 U.S. 57, 61 [60 L.Ed. 143, 146, 36 S.Ct. 25]. Doubtless such special value of the plaintiffs' land was duly considered by the President in fixing the amount to be paid therefor. The *settled rules of law, however, precluded his considering in that determination consequential damages for losses to their business, or for its destruction. Joslin Mfg. Co.* v. *Providence,* 262 U.S. 668, 675 [67 L.Ed. 1167, 1174, 43 S.Ct. 684]. Compare *Sharp* v. *United States,* 191 U.S. 341 [48 L.Ed. 211, 24 S.Ct. 114] ; *Campbell* v. *United States,* 266 U.S. 368 [*ante,* 328, 45 S.Ct. 115]. *No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land.* There can be no recovery under the Tucker Act if the intention to take is lacking. *Tempel* v. *United States,* 248 U.S. 121 [63 L.Ed. 162, 39 S.Ct. 56]. Moreover, the act did not confer authority to take a business. In the absence of authority, even an intentional taking cannot support an action for compensation under the Tucker Act. *United States* v. *North American Transp. & Trading Co.* 253 U.S. 330 [64 L.Ed 935, 40 S.Ct. 518]." (Italics added.) (See also *United States* v. *Willow River Power Co.,* 324 U.S. 499, 502 [89 L.Ed. 1101, 1107, 65 S.Ct. 761] ; *United States* v. *Grand River Dam Authority,* 363 U.S. 229, 236 [4 L.Ed.2d 1186, 1191, 80 S.Ct. 1134] ; *Joslin* v. *Marin Municipal Water Dist.,* 67 Cal.2d 132 [60 Cal. Rptr. 377, 429 P.2d 889] ; *People* ex rel. *Dept. of Public Works* v. *Lundy,* 238 Cal.App.2d 354, 357-358 [47 Cal.Rptr. 694].)

We are not persuaded that we should depart from what appears to be the well established law in California, namely, that the condemnor shall only pay compensation for the property taken and shall not be required to compensate for any and all losses which may have been sustained by an owner or otherwise as a consequence of the taking, such as lost oppor-

tunities or expectancies and inconvenience suffered under the circumstances.

Allen has cited many out-of-state cases, particularly New York cases, which supposedly support its view; however, such cases are not of much consequence in the face of the law in California as we view it.

We are not to be understood as saying that the law is as it should be; however if the law is to be changed it should be by the Legislature, and not by this court. We can readily understand that Allen might feel that the City condemned the real property out from under it and then left it with an inventory of second-hand grocery items and a no-going business without compensation. We can also see where the City relied upon the law as it is and carefully circumvented any condemnation or taking of the business of Allen and thereby avoided all of the problems with reference to good will, loss of profits, reputation of the business, personality of the operators, the customers' habits in dealing with it and dozens of other vague and uncertain elements.

Our view as heretofore indicated is that there was substantial evidence to sustain the findings of the trial judge and the findings support the judgment.

We have carefully read the record in this case and have considered all of the contentions of the respective parties.

The judgment, in all respects, is affirmed.

Wood, P. J. and Lillie, J., concurred.

A petition for a rehearing was denied September 25, 1968, and the petition of the defendant and appellant for a hearing by the Supreme Court was denied October 23, 1968.