[Civ. No. 33517. Second Dist., Div. Three. Jan. 28, 1970.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
LOUIS SABATASSO, Defendant and Appellant.

## COUNSEL

O'Neill, Huxtable & Coskran, Francis H. O'Neill and Richard L. Huxtable for Defendant and Appellant.

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Assistant City Attorney, Gary Netzer and Norman L. Roberts, Deputy City Attorneys, for Plaintiff and Respondent.

## OPINION

**FORD, P. J.**—This is an appeal by a tenant, Louis Sabatasso, from a judgment and final order of condemnation entered on May 3, 1967, under

which he was denied compensation. His bakery occupied the ground floor of the building on the parcel of real property involved, the front part of which was taken in widening Hoover Street in Los Angeles. The equipment as to which he claimed damages pursuant to the provisions of section 1248b of the Code of Civil Procedure[1] was located on the portion of the parcel not taken. Pursuant to a stipulation between the owner and the condemner for judgment and final order of condemnation,[2] the whole building was demolished, the provision with respect thereto being set forth in the judgment as follows: "That the plaintiff [The City of Los Angeles] will demolish and remove the building located partially upon Parcel No. 25A and partially upon the contiguous larger parcel; and that the cost of said demolition and removal shall be borne entirely by the plaintiff."

In the complaint in condemnation filed on April 8, 1966, the tenant Louis Sabatasso was named as a defendant. The summons was issued on April 8, 1966. The defendant Sabatasso filed an answer to the complaint in which he alleged that as the tenant in possession of the premises he was the owner of "certain equipment designed for manufacturing purposes and installed for use in a fixed location, to wit, two ovens, steam proof-box, boiler, walk-in refrigerator[,] two barrel dual speed mixer, steam kettle, two pocket divider, together with related electrical[,] plumbing and ventilation installations; that said equipment designed for manufacturing purposes is located within the remainder of the larger parcel not sought to be acquired herein." He further alleged that by virtue of the severance of Parcel No. 25A and the construction of the public improvement in the manner proposed, "said equipment designed for manufacturing purposes . . . will be damaged in the sum of $38,000.00."

The final pretrial conference order was filed on February 23, 1967. Its significance at this point is found in the statements therein that the city had not, as of February 8, 1967, "physically disturbed the possession of the defendant Louis Sabatasso; that said defendant Sabatasso has been served with notice to quit the subject property by the defendants Adolph and Rose Swartz [the owners] and upon defendant Sabatasso's failure to vacate said subject property and [an] action in an unlawful detainer was filed by said defendants Swartz and served upon said defendant Sabatasso. [¶] It is further stipulated by the parties herein that the defendant Louis Sabatasso is not entitled to any bonus value by virtue of any right of future occupancy.

[1]Section 1248b of the Code of Civil Procedure, enacted in 1957, is as follows: "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation."

[2]The superior court file, which has been transmitted to this court at its request (see rule 12(a), California Rules of Court), contains the stipulation which is dated April 28, 1967, and was filed on May 2, 1967.

[¶] Also, at this time of final pretrial the plaintiff makes a motion that plaintiff be permitted to withdraw from its election to proceed pursuant to Section 1246.1 C.C.P.[3] There is no opposition to the motion and it is granted. [¶] At the time of the first pretrial conference on October 4, 1966 there was a provision for a trial of nonjury issues. . . . It appears that the matter to be heard and disposed of by the court without a jury on that date will resolve the question of the interests of the lessee, the defendant Louis Sabatasso. If it is determined that said lessee has no compensable interest then the dates hereafter set for final pretrial and trial as to plaintiff and the said lessee should be ordered vacated by the trial judge who hears and disposes of the matter on March 3, 1967. . . ."

The nonjury trial of the issue as between the city and the tenant Sabatasso occurred on March 6, 1967. The findings of fact of the trial court signed on March 29, 1967, were as follows: The defendant Louis Sabatasso was a month-to-month tenant of the property; the condemnation action and the order of immediate possession issued therein did not disturb his occupancy of the property, but his possession and occupancy were terminated by the owners of the property pursuant to section 789 of the Civil Code prior to the taking of physical possession by the city; there were no acts or representations by any agent of the city which would estop the city from denying that the defendant had a compensable interest. The conclusions of law were that the defendant Sabatasso was not entitled to compensation for damages in the proceeding in condemnation and that the city was

---

[3] Section 1246.1 of the Code of Civil Procedure is in pertinent part as follows: "Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein; thereafter in the same proceeding the respective rights of such defendants in and to the award shall be determined by the court, jury, or referee and the award apportioned accordingly."

No question is raised on this appeal as to the right of the city to waive the provisions of section 1246.1 and have the question of whether the tenant Sabatasso had a compensable interest separately determined in a proceeding in which it and Sabatasso were the litigants. As stated by this court with respect to section 1246.1 in *People ex rel. Dept. of Public Works* v. *Lynbar, Inc.,* 253 Cal.App.2d 870, at page 878 [62 Cal.Rptr. 320]: "We think an examination of its language and contents demonstrates that it is purely and exclusively a procedural statute under which a condemnor may insist that the total award for the property to be taken be first determined and then, in the second phase of the trial, the respective shares of the multiple owners in that award be ascertained. This division of this type of condemnation trial into two parts, at the election of the condemnor, which we think is almost invariably exercised, not only expedites both the settlement and the trial of these cases, but also prevents the total sum awarded against the condemnor from being pyramided by multiple jury verdicts arrived at independently and without reference to each other, or by expert valuation witnesses for the various owners accomplishing the same end by valuing only the separate interests of those who have employed them without regard to the valuation of the entire property and without regard to the valuations of the estates or interests of the other owners of that property."

not estopped to deny that he had a right to compensation. It was ordered that "the foregoing be incorporated in the Judgment to be entered herein."

In setting forth a résumé of evidence received in the trial of the issue between the city and the tenant Sabatasso as to the existence of a compensable interest, reference to evidence in support of the contention that Sabatasso was entitled to be considered as being in possession of the premises under a renewed lease from the owner Swartz, because he had made improvements and added equipment in reliance on the promise of the landlord to renew his lease, will be omitted since, as will be explained, Sabatasso's status as a tenant from month to month, after the expiration of the last written lease on December 31, 1965, is sufficient to sustain a finding that he has a compensable interest if facts otherwise exist which are sufficient to bring his equipment within the provisions of section 1248b of the Code of Civil Procedure.

Before turning to pertinent recent decisions, reference will be made to portions of the proceedings at the trial on March 6, 1967. It was stipulated that the ground floor of the building had been occupied by Sabatasso as a tenant of the owner Swartz since January 16, 1961, pursuant to two written leases, the last thereof expiring under its terms on December 31, 1965. (As has been noted, the action in condemnation was filed on April 8, 1966.) It was further stipulated that the equipment of Mr. Sabatasso located on the part of the real property taken by the city consisted only of a wooden shelf or loft structure used to provide additional storage area and that the rest of Mr. Sabatasso's equipment, which included two large ovens used for manufacturing purposes and other bakery equipment, was located on the remaining portion of the leased premises.

Mr. Sabatasso testified as to the equipment which he installed on the property, a portion of his testimony as to additions made prior to the termination of the last lease which expired on December 31, 1965, being as follows: ". . . we put in additional cooling systems, to wit, a large walk-in cooler. We put in another industrial oven, twice the size of the present one we had. We revamped our proofing system. We doubled the capacity of our proofing system. We rebuilt several of the machines that were already there." He testified that the oven installed in November of 1964, together with the plumbing and electrical work, cost approximately $7,800. Mr. Sabatasso further testified that after the taking of the front portion of the property to a depth of 17 feet, the premises would no longer be suitable for his operation, even if a new front were placed on the building, his reasons being expressed as follows: "Well, now, because in taking the 17 feet, although the 17 feet doesn't come in direct contact with the ovens, it only misses them by a couple of feet. First of all, the Health Department wouldn't permit it. There would be no adequate ventilation. We

would have to put in a whole new air conditioning system. We would have no parking area and no storage area and no office space." He testified that he suffered a total loss with respect to the equipment.

A problem of a kindred nature was before the court in *Redevelopment Agency* v. *Diamond Properties,* 271 Cal.App.2d 315 [76 Cal.Rptr. 269], in which case the opinion was filed on March 28, 1969. The appeal was from a judgment in an eminent domain action wherein it was determined that Diamond Properties had no compensable interest in property condemned by the Redevelopment Agency of the City of Stockton. Diamond Properties operated a meat processing plant. Its lease had expired several months prior to the filing of the action in condemnation, at which time it was in possession under a month-to-month tenancy. The condemner advised the owner that if notice of termination of the month-to-month tenancy was served on Diamond Properties, the Redevelopment Agency would purchase her property at an agreed price. Accordingly, the property owner gave such a notice in which it was stated that the tenancy would terminate as of the close of business on April 30, 1966. On May 6, 1966, the Redevelopment Agency acquired the interest of the fee owner by grant deed and filed a written stipulation that the condemnation action be dismissed as to the owner of the property, along with a notice of abandonment as to her. The Redevolpment Agency's motion for a judgment of dismissal as to Diamond Properties was denied and the case was thereafter tried.

In the trial court Diamond Properties asserted a claim for compensation for the meat processing equipment on the premises under the provisions of section 1248b of the Code of Civil Procedure. Under the lease theretofore in effect it was entitled to remove such equipment upon termination of the lease. The trial court held that section 1248b was inapplicable because at the time the action in eminent domain was filed and summons issued, Diamond Properties had possession of the premises under a month-to-month tenancy and, after the service of notice of the termination of that tenancy, it had remained in possession for an additional period of six months as a tenant at sufferance without paying rent. Therefore, the trial court concluded, its leasehold interest in the property was neither defeated nor interfered with by the condemnation action.

In rejecting the position of the Redevelopment Agency, the appellate court stated (271 Cal.App.2d at pp. 318-319): "However, the facts of the cited cases are not apposite, for we are not concerned with a lessee's right to use the premises. It is not a possessory interest for which appellant claims the right to compensation; rather, appellant claims it had an interest

in the property itself by virtue of section 1248b of the Code of Civil Procedure. The two-fold test delineated by that section is whether the equipment is designed for manufacturing or industrial purposes *and* installed for use in a fixed location. When these two conditions are met, such equipment 'shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation.' The trial court did not reach this question, as it deemed appellant's right to compensation to rest upon its right to possession as a tenant. . . . Where the tenant owns personal property that measures up to section 1248b, such personal property being 'deemed a part of the realty,' he has a compensable interest in the property which is separate and apart from his possessory rights. . . . Thus the critical question is not whether appellant's possessory rights under the lease were or were not interfered with, but whether, at the date summons was served (Code Civ. Proc., § 1249.1) any of appellant's equipment must be deemed part of the real property under the test formulated by the Legislature in the enactment of section 1248b of the Code of Civil Procedure."

It should be further noted that in the *Redevelopment Agency* case, the appellate court stated (271 Cal.App.2d at pp. 320-321): "The ownership *interest* in the property, or the right to be compensated as contrasted with the value or amount of compensation, is controlled by section 1249.1 [of the Code of Civil Procedure], that is, the time summons issues. . . . Since section 1249.1 governs the time for determining the interest of a condemnee, logically it follows that respondent-condemner cannot, by acquiring fee title to the property after issuance of summons, deprive appellant of its compensable interest established by sections 1249.1 and 1248b." (See *City of Los Angeles* v. *Allen's Grocery Co.,* 265 Cal.App.2d 274, 277 [71 Cal.Rptr. 88].)

In *Concrete Service Co.* v. *State of California* ex rel. *Dept. of Public Works,* 274 Cal.App.2d 142 [78 Cal.Rptr. 923], the opinion in which was filed on June 19, 1969, the court stated the problem to be resolved therein as follows (p. 144): "The question posed on this appeal is whether a condemning authority, desiring to acquire real property for a public use, may avoid payment for personal property consisting of industrial equipment owned by a tenant, which is admittedly part of the realty for purposes of condemnation, by the device of an out-of-court purchase of the landlord-owner's fee followed by the authority's termination of the tenancy and demand for the land 'clear of all improvements.' " The action was one in inverse condemnation brought by Concrete Service Company (Concrete) against the Department of Public Works, Division of Highways (Depart-

ment). Concrete had been a tenant since 1950 under three successive five-year leases. On the property it had constructed a concrete batch plant consisting of buildings, garages, tanks and equipment. Under the terms of the lease the plant was the property of Concrete, which had the right to remove it at the termination of the tenancy. In 1965, at the expiration of the third lease, a new lease was prepared but was never executed by the parties and, pursuant to the terms of the third lease, Concrete was in possession under a month-to-month tenancy.

In the course of reversing the judgment in favor of the Department the court stated (274 Cal.App.2d at pp. 145-147): "It appears to be conceded that if the Department had in fact exercised its power of eminent domain and commenced a condemnation action against the subject property, by virtue of section 1248b [of the Code of Civil Procedure], Concrete would have been entitled to compensation for the 'taking' of its batch plant. . . . [¶] In the case at bench the Department unequivocally expressed its intention to take the subject property for freeway purposes. It then appraised the plant's equipment for the 'purpose of condemnation.' We conclude that the Department acquired the real property in question, not as a result of bargaining in the open market, but rather in the broad exercise of its power to condemn private property for public use. Since the method used in obtaining the property constituted condemnation or its substantial equivalent, it is reasonable that Code of Civil Procedure section 1248b be applied. It follows, as prescribed by that section, that Concrete's fixtures and equipment, although personal property, 'shall be deemed a part of the realty for the purpose of condemnation.' "

The court further stated (274 Cal.App.2d at p. 147): "Our conclusion is consistent with the policy expressed by Traynor, J., concurring in *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d 384, 396-397 [153 P.2d 950], as follows: 'The decisive consideration is . . . whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking. It is irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property but the loss to the owner. . . .' "

The case presently before this court differs from the *Diamond Properties* case in that the equipment involved herein was on that portion of the parcel of real property not taken rather than on the front portion of the parcel taken for the purpose of widening Hoover Street. In the *Diamond Proper-*

*ties* case the court stated (271 Cal.App.2d at p. 319): "Had the lessor owned the personal property in question, there would have been no difficulty in getting to the matrix of the case. The question quite clearly would have been whether the personal property was part of the realty, thus entitling the owner of the fee to the value of the personal property deemed to be a part of realty by reason of section 1248b." In *City of Los Angeles* v. *Klinker,* 219 Cal. 198, at page 205 [25 P.2d 826, 90 A.L.R. 148], the Supreme Court set forth the following quotation from 2 Lewis on Eminent Domain (3d ed.) page 1276, section 728: "Fixtures upon the property taken must be valued and paid for as part of the real estate, and any depreciation in the value of fixtures upon the part not taken is to be taken into consideration, the same as damage to the soil itself."[4] (See *City of Los Angeles* v. *Siegel,* 230 Cal.App.2d 982, 985 [41 Cal.Rptr. 563].)

As has been noted, section 1248b, enacted in 1957, provides that specified equipment shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation, the property covered thereby being designated as "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location." ■ There is no reason for limiting the application of section 1248b to the designated equipment when located on the portion of the parcel of real property being taken and thereby excluding such equipment from consideration with respect to the matter of severance damages when located on the portion of the parcel not taken. Apropos is the reasoning of the concurring opinion in *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d 384, 396-397 [153 P.2d 950] (quoted, as hereinabove set forth, in the *Concrete Service Company* case), that the "decisive consideration is . . . whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking" and that it is "irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property, but the loss to the owner." The application of section 1248b to a case

[4]Section 1248 of the Code of Civil Procedure is in part as follows: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess: . . . 2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff."

involving injury in the nature of severance damages is consonant with the legislative intent in the enactment of that section.[5]

■ As noted in the *Diamond Properties* case, as hereinabove set forth, two of the issues presented by a lessee's claim for damages pursuant to the provisions of section 1248b of the Code of Civil Procedure are whether the equipment was designed for manufacturing or industrial purposes and whether it was installed for use in a fixed location. (271 Cal.App.2d 315 at p. 318.) The trial court in the present case made no findings of fact as to those issues. A failure to find on a material issue is reversible error. (*Millbrae Assn. for Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 238 [69 Cal.Rptr. 251].) Moreover, as has been indicated, the trial court appears to have proceeded on a misconception of the law as to what constitutes a compensable interest under the provisions of section 1248b of the Code of Civil Procedure.

Insofar as the obligations of the plaintiff to the owners of the property, Adolph Swartz and Rose Swartz, are concerned, the judgment and final order of condemnation, as indicated hereinabove, was in accordance with a stipulation between those parties. But the portions of that judgment and final order relating to the plaintiff and the defendant Louis Sabatasso must be reversed and the cause with respect thereto remanded to the trial court for a new trial so that there may be a determination as to whether the defendant Sabatasso has suffered injury in the nature of severance damages within the ambit of the provisions of section 1248b of the Code of Civil Procedure.

Those portions of the judgment and final order of condemnation relating to the determination of the issue of whether the defendant Louis Sabatasso is entitled to an award of damages by reason of the condemnation in this case

---

[5]In the article on selected portions of the 1957 code legislation in volume 32 of the California State Bar Journal, at page 563 it was stated with respect to the then newly enacted section 1248b of the Code of Civil Procedure: "This addition is apparently designed to broaden the scope of property condemned for public use for which the owner must be compensated. When land is condemned for public use, the owner's compensation formerly included only the value of the buildings and other fixtures 'permanently' attached to the land (Code Civ. Proc. § 1248(1); Civ. Code § 660; *City of Los Angeles* v. *Klinker, supra,* 219 Cal. 198 (1933)). Generally, the parties' subjective *intent* determines whether property is permanently attached to the land or retains its character as personalty (*Gosliner* v. *Briones,* 187 Cal. 557 [204 P. 19] (1921)), and in condemnation proceedings, the manner of installation and the character and nature of the property will determine this intent (*City of Los Angeles* v. *Klinker,* above). [¶] This addition apparently abrogates the tests set forth in the *Gosliner* and *Klinker* cases as to whether manufacturing or industrial equipment is to be considered realty or personalty in condemnation proceedings. *Manufacturing or industrial equipment which is installed for use in a fixed location is deemed part of the realty in condemnation proceedings and hence compensable to the owner.*"

are reversed and the cause with respect thereto is remanded to the superior court for a new trial in accordance with the governing law as set forth in the opinion of this court on this appeal.

Cobey, J., and Allport, J., concurred.