[Civ. No. 36931. Second Dist., Div. Five. Feb. 2, 1972.]

MAYWOOD MUTUAL WATER COMPANY NO. 2,
Plaintiff and Appellant, v.
CITY OF MAYWOOD, Defendant and Respondent.

## COUNSEL

George C. Gillette, Burris & Lagerlof and Ben A. Schuck III for Plaintiff and Appellant.

Elwayne E. Smith for Defendant and Respondent.

## OPINION

KAUS, P. J.—Appeal by the plaintiff from an adverse judgment in an action for declaratory relief.

Plaintiff, a mutual water company, instituted the action seeking a determination that defendant city, rather than plaintiff, must bear the expenses of relocating certain portions of plaintiff's water distribution system in connection with the improvement of streets within plaintiff's service area. The case was tried on stipulated facts.

Plaintiff was established in 1920 for the purpose of providing water service to the inhabitants of an unincorporated area of Los Angeles County which is now within the City of Maywood. Laguna Land and Water Company (subdivider) was the owner, developer, and subdivider of the land within the service area of plaintiff.[1] On April 6, 1920, the subdivider con-

---

[1] It appears from the record that the land subdivided was serviced by three mutual water companies, each of which was in substantially the same legal position vis-a-vis the defendant city, each of which appeared as a plaintiff below, and each of which lost. For reasons unknown to us only Maywood Mutual Water Company No. 2 appealed.

veyed to plaintiff the entire water production and distribution system within its service area. This conveyance was evidently never recorded.

At various times as the subdivision progressed, both before and after April 6, 1920, the subdivider recorded maps of tracts within plaintiff's service area which, pursuant to Statutes 1907, chapter 231, page 290, designated streets to be dedicated to the county. This act provided a system whereby streets could be dedicated to public use by recording subdivision maps indicating the areas to be dedicated signed by the owners of the tract and "also by all other persons whose consent is necessary to pass a clear title. . . ." (Stats. 1907, ch. 231, § 3, p. 291, as amended Stats. 1919, ch. 122, p. 164.) No easements for the water distribution system were noted on any of the tract maps. Plaintiff did not join in the recordation of any of the maps.

According to the stipulation, what the subdivider conveyed to plaintiff on April 6, 1920 was "All of the mains, pipelines, and all water production, transmission and distribution facilities then constructed and installed by [the subdivider] within its service area, including those facilities installed in portions of the service areas designated as streets on the tract maps recorded from time to time, both before and after April 6, 1920. . . ." At the time of the conveyance the distribution system was incomplete, and subdivider agreed to complete the system at its own expense.[2] The system

[2]"WHEREAS, said party of the first part herein is the owner of those certain wells, pumps, electric motors, tanks, belts, tools and other equipment necessary to, and used in the operation of the pumping plants located on lot 953 tract 3468, and on lots 1111 and 1113, tract 3607, in the County of Los Angeles, State of California, and is also the owner of those certain pipes used for distributing water from the plants above described in and to the property situate in Laguna Mutual Water District No. 2, and

"WHEREAS, the said party of the second part desires to purchase said property aforesaid, and

"WHEREAS, said party of the first part herein has agreed to accept, and said party of the second part has agreed to issue all of its capital stock in consideration of the transfer by party of the first part to party of the second part of all of the property above described, including title in fee to the said lots above mentioned.

"Now THEREFORE in consideration of the premises and other valuable considerations, receipt whereof is hereby acknowledged, said Laguna Land and Water Company hereby agrees to execute a good and sufficient deed and bill of sale, conveying and transferring to party of the second part all of the property hereinabove described.

"It is understood and agreed between the parties hereto that all the pipe necessary to distribute water to each lot and parcel of land within said Laguna Mutual Water District No. 2 has not yet been laid, and in further consideration thereof said Laguna Land and Water Company agrees to complete said water system and furnish all pipe and other material and install the same at its own expense at certain times as it is necessary to continue the further laying of said pipe in order to meet the needs of any of the purchasers of the lots or tracts of land in said water district, *it being the*

was later completed and has been used and maintained by plaintiff ever since. The trial court found that whatever right plaintiff had to the use of public streets for "water works purposes" was subject to defendant's paramount right in the public use of streets and that its service connections must therefore yield to defendant's rights.

■  Plaintiff contends that the record demonstrates that the conveyance of April 6, 1920 was, at least as between it and the subdividers, an easement for its distribution system throughout its service area. We agree. To hold otherwise would be to construe the conveyance as merely passing title to the hardware itself, without regard to its location or function as a system. Although the word "easement" was not expressed in the conveyance, this fact cannot defeat the clear implication of the grant. The only useful function the pipes and equipment could serve was that of distributing water. This was the very purpose for which plaintiff was established, and the service it has performed ever since. The italicized language in the conveyance of April 6, 1920 (see fn. 2, *supra*) leaves no doubt that the parties to the conveyance intended that plaintiff have the easement privileges essential to the use of the system conveyed. (Civ. Code, § 3522; *Mosier* v. *Mead*, 45 Cal.2d 629, 632-633 [290 P.2d 495]; *Fristoe* v. *Drapeau*, 35 Cal.2d 5, 8-10 [215 P.2d 729]; *Rubio Canon Land and Water Association* v. *Everett*, 154 Cal. 29, 32-33 [96 P. 81]; *Cave* v. *Crafts*, 53 Cal. 135, 139-140; *Peet* v. *Schurter*, 142 Cal.App.2d 237, 242 [298 P.2d 142].)

The fact that the distribution system was not completed at the time of the conveyance does not defeat plaintiff's easements. The situation with respect to the uncompleted portion of the water distribution system is the same as when a right of way is conveyed without describing its exact location or dimension.  ■  "It is not essential to the validity of the grant of a right of way that the way be indicated by metes and bounds or by figures or other description giving definite dimensions of the easement. A grant which designates the right of way as such and definitely describes the lands which are servient is sufficient. [Fn. omitted].  ■  If the location and limits of the right of way are not defined in the grant, a reasonably convenient and suitable way is presumed to be intended, and the right cannot be exercised over the whole of the land. . . ." (3 Tiffany, Real Property (3d ed. 1939) ch. 14, § 804, p. 328.) "In determining the intent of the parties, consideration may be given not only to actual uses being made at the time of the grant, but also to such uses as the facts and circumstances show were

*further intent hereof that when said water system is completed, it shall be adequate to carry water to each and every lot and parcel of land in said Laguna Mutual Water District No. 2.*" (Italics added.)

within the reasonable contemplation of the parties at the time of the conveyance." (*Neff* v. *Ernst,* 48 Cal.2d 628, 635-636 [311 P.2d 849].)[3]

█ The conveyance and the surrounding circumstances demonstrate the parties' intent that plaintiff have an easement for its system.

As already noted some of the subdivision maps were recorded before April 6, 1920. With respect to these the parties are in agreement that plaintiff must bear the cost of relocating the service connections. Since the sole purpose of this litigation is to determine the respective rights and duties of the parties with respect to that cost, it is quite unnecessary to determine, at this time, whether, as far as defendant is concerned, plaintiff has any rights on the dedicated portion of the subdivision.[4]

█ Those portions of plaintiff's service area wherein the subdivider, by map, dedicated street easements to the county after April 6, 1920, present the only real issue on this appeal. Plaintiff argues that its easement was in existence before the dedication of streets to the county, and that the dedication could not convey to the county any interest which had previously been conveyed to plaintiff. From this plaintiff reasons that, to the extent that its easement rights conflict with those of defendant, they are paramount and defendant must bear the expenses of relocation for its own benefit.

The trial court found that the county took dedication of the streets in this portion of the subdivision free of any easement of plaintiff, because "there was nothing of record to put the Board of Supervisors of the County, as predecessors of defendant City, on notice that anyone claimed an ease-

---

[3]The Restatement states the rule as follows: "The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such a use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from future uses of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement. . . ." (Rest., Property, § 484, com. b.)

[4]The legal picture is clouded, because in 1961 the Legislature repealed section 905 of the Streets and Highways Code which declared that by taking or accepting land for a county highway the public acquires only the right of way. Part of the repealing legislation was the following section: "Any proceeding, action or defense based solely on any alleged effect of Section 905 of Streets and Highways Code prior to its repeal by Section 2 of this act as preventing a county or city and county from acquiring fee title by deed or condemnation to land for highway purposes shall not be commenced or maintained after the expiration of one year from the effective date of this act." (Stats. 1961, ch. 1788, § 3.) We think that an interpretation of this rather obscure provision should await a case that calls for it.

ment in the portion dedicated for public streets." The memorandum opinion of the trial court further explains its reasoning. The statute under which the dedication of streets was made required that the map recorded include the signature of all persons whose consent is necessary to pass title to the land. (Stats. 1907, ch. 231, § 3, p. 291.) It further provided criminal penalties for any subdivider who sold "any lot or parcel of land, by reference to any map or plat" before recordation in compliance with the statute. (Stats. 1907, ch. 231, §§ 8, 9, p. 292.) The court presumed that the subdivider would not have violated the law by selling lots without having recorded a map in compliance with a statute. Noting that such compliance required the signature of all persons whose consent was necessary to pass title to the land, which would have included the holder of any easement, the court reasoned that no easement could have been created by the conveyance of April 6, 1920, for otherwise the subdivider would have violated the law when selling the lots.

Any presumption of compliance with the terms of the statute must fall before the uncontested evidence of sale of the water works in 1920 and the creation of an easement thereby. Whether or not the statute was violated by the subdivider is not in issue here.

The best inference which could be drawn from its terms in this case is that the recordation did not, in itself, provide the county with notice of water distribution easements. Further, it may be conceded, for the sake of our decision, that a physical inspection of the dedicated portion of the subdivision would not have revealed the easement. The only real question is whether the county's position can be equated to that of a bona fide purchaser for value whose rights are prior to those of the holder of an unrecorded estate. (Civ. Code, § 1214.)

Neither party, nor for that matter this court, has been able to find any authority on the point.[5] It is, of course, perfectly obvious that a public entity which accepts a dedication is not a purchaser who parts with "a valuable consideration" for the dedicated property. The best that defendant can argue is that the county, by acceptance of the streets designated in the subdivision maps, assumed an implied or express duty to maintain them.[6] It does not seem to us that this is the type of consideration which section 1214 of the Civil Code envisages. Every owner of real property is subject to certain obligations to persons on or off the property, regardless of whether his rights to the property were purchased, inherited or given to

---

[5] At our request this question was specially briefed before the oral argument.

[6] Query, however, how that duty is enforceable by any member of the public. (Cf. *Clay* v. *City of Los Angeles,* 21 Cal.App.3d 577, 584 [98 Cal.Rptr. 582].)

him. The mere incidence of obligations by virtue of ownership, therefore does not turn a donee into a purchaser.

It may be very desirable from a social point of view that public entities be considered on a par with bona fide purchasers. The matter is, however, eminently one for the Legislature to decide.

The trial court felt that this case falls within the principle of *Airways Water Co.* v. *County of L. A.*, 106 Cal.App.2d 787 [236 P.2d 199]. The facts of that case are essentially identical to those of the case at hand, but for the distinction that there the water company joined in the offer to dedicate to the county. That distinction warrants a difference in treatment. There the water company was denied priority not by the later acts of its grantor, but by its own acts of dedication. Though the trial court in this action at one point indicated that plaintiff should be bound by the acts of the subdivider because of a "unity of interest and officers" between them, the facts before it are wholly inadequate to sustain such a conclusion. The only facts bearing on this issue are that the conveyance of the water system to plaintiff was made in consideration of the issuance by plaintiff to the subdivider of all its capital stock, and that the assistant secretary of the subdivider was also the president of plaintiff at the time of the conveyance.

There is no indication whatever that plaintiff and the subdivider were ever engaged in any common enterprise; that they ever dealt at anything but arm's length; that the subdivider ever acted as the agent of plaintiff; or that a recognition of the separate entities of the subdivider and plaintiff would promote any fraud or injustice. Furthermore, the by-laws of plaintiff expressly make each share of its stock appurtenant to specified lots within the service area, and provide that the shares may be transferred only with the land. Thus it appears that the subdivider conveyed the shares of plaintiff which it received by virtue of the conveyance of the water works to the purchaser of each lot, and could not retain the shares for its own benefit. We have been unable to find any authority which would sanction the court's assumption on the facts before it. (*Marr* v. *Postal Union Life Ins. Co.*, 40 Cal.App.2d 673, 681 [105 P.2d 649]; *Norins Realty Co.* v. *Consol. A. & T. G. Co.*, 80 Cal.App.2d 879, 883 [182 P.2d 593].)

Since plaintiff may not be said to have joined in the dedication because of the acts of the subdivider, the *Airways* case indicates the result reached here. (*Airways Water Co.* v. *County of L. A.*, 106 Cal.App.2d 787, 790-791 [236 P.2d 199].) As to those tracts in which the streets were dedicated after the conveyance of the water works to plaintiff, nothing has occurred which would subordinate its interests to those of defendant. In those areas

defendant must therefore bear the expense of relocating plaintiff's facilities when that is necessary for defendant's benefit. (Cf. *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.*, 182 Cal.App.2d 176 [5 Cal.Rptr. 783].)

The judgment is reversed.

Stephens, J., and Reppy, J., concurred.