[Civ. No. 1491. Fifth Dist. May 12, 1972.]

THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF WATER RESOURCES, Plaintiff and Appellant, v. TEXACO, INC., Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Robert Burton, Assistant Attorney General, and Richard D. Martland, Deputy Attorney General, for Plaintiff and Appellant.

Borton, Petrini, Conron, Wetteroth, Hitchcock, Werdel & Kuhs and Leonard Seaman for Defendant and Respondent.

## OPINION

**STONE, P. J.**—In the course of constructing the California Aqueduct along the west side of Kern County, appellant condemned a right of way, of which approximately 28.2 miles were intersected by three oil pipelines owned and operated by respondent, Texaco. The pipelines had to be relocated and a controversy arose over whether appellant, as condemner, was liable for the cost of relocating the lines.

Texaco's right to maintain the pipelines derived from three agreements with the owner of the fee. Two of the agreements are denominated "Pipe Line License Agreement," and all three are similar in content. Appellant contends that the agreements convey only a license to Texaco, which is not a compensable property interest under the laws of condemnation. Additionally, appellant points out that the grantors in all three agreements reserved the right to require Texaco to relocate, at its own expense, any pipeline that interfered with the grantors' use of the property. Thus, argues appellant, as owner of the fee by virtue of condemnation, it succeeded to the right of the grantors to require Texaco to relocate the pipelines at its own expense. To avoid delay in construction of the aqueduct, the parties entered into agreements whereby Texaco would relocate the pipelines and the department would reimburse Texaco for the cost of such relocation if Texaco should prevail in this litigation.

The matter went to trial on the pleadings. No evidence other than the three original pipeline license agreements, the assignments to Texaco, and the amendments to said agreements between the grantors and Texaco, was before the court. Neither side lays much stress upon the amendments to the agreements executed after the impending condemnation action became apparent; these documents provided that in the event of condemnation the provisions requiring the licensee to relocate the pipelines "shall be null and void with respect to the land so acquired and shall not issue to the benefit of any such government, subdivision, body or agency."

Thus the case comes to us as a question of law, whether, under the agreements and the law of condemnation, the state or Texaco bears the cost of relocating the three pipelines. At first blush the answer would seem to hinge upon an interpretation of the three pipeline agreements. Since

Texaco could be required by the fee owner to relocate the pipelines, appellant asserts the agreements conveyed a license only. As appellant points out, a license does not create an interest in property that is compensable in a condemnation proceeding. (*Acton* v. *United States* (9th Cir. 1968) 401 F.2d 896; *People* ex rel. *Dept. Pub. Wks.* v. *Lundy,* 238 Cal.App.2d 354, 358 [47 Cal.Rptr. 694]; 2 Nichols, The Law of Eminent Domain (Rev. 3d ed.) § 5.23[7].)

Respondent contends that each basic agreement created not a license, even though the word "license" is used in each, but, rather, three easements for pipelines over a given area of land, the exterior boundaries of which were defined in the agreements. (Cf. *Maywood Mut. Water Co.* v. *City of Maywood,* 23 Cal.App.3d 266, 270 [100 Cal.Rptr. 174].) The use of the word "license," it is asserted, relates to the requirement that Texaco move or relocate any of the pipelines within the boundaries of the easement upon request by the grantors. This interpretation of the agreements furnishes respondent the basis for its argument that the right to maintain each pipeline constitutes an easement, while the location of the pipeline at any particular time was a license subject to change within the boundaries of the easement, upon notice.

Respondent buttresses its easement theory by pointing out that although it could be required to change the location of any of the pipelines, the right to maintain the pipelines may be terminated only upon violation of several conditions relative to use, among them nonuser for three years. Respondent emphasized that the right to maintain the pipelines cannot be terminated capriciously by the grantors as the agreements provide for 30 days' written notice of a failure to comply. Moreover, respondent had the right to correct any default within 30 days. These provisions, contends respondent, clearly vest in it more than a mere license; they convey an easement and as such a compensable interest.

Further, respondent argues that in view of the fact the pipelines were installed at a cost of $1,313,276 upon reliance of the right to use the rights of way described in the agreements, subject only to the termination clauses discussed above, and that in reliance thereon it maintained said pipelines for several years at a cost in excess of $100,000 per year, appellant is estopped from now asserting that respondent has no legal interest in the property entitling it to the agreed $121,000 cost of relocating the pipelines.

Respondent answers appellant's contention that it succeeded to the rights of the fee owner to require relocation of the pipelines by calling attention

to the amendments to the agreements which provide that in case of condemnation of the land the relocation provision "shall be null and void with respect to the land so acquired." Respondent denies that the amendments were attempts to discriminate against the state after the proposed condemnation became known; rather, it says the writings were intended merely as an expression of the intent of the parties to the original agreements that the owners in fee conveyed a compensable interest in the pipeline rights of way to Texaco.

The trial judge found the interest of respondent to be in the nature of an easement under the facts surrounding its right to use the land described in the agreements, at least that respondent acquired more than a mere license. In the posture of this case it is unnecessary to decide whether respondent owned an easement or whether the huge investment in the pipelines created a sort of "equitable easement" and an estoppel. We do not reach these questions because the court also found that section 1248b[1] of the Code of Civil Procedure is applicable; we believe this finding is correct and that it is dispositive of the case.

Appellant contends that section 1248b is not applicable to a licensee. We do not find such a restriction in either the language of section 1248b or the case law construing the statute. The provision that "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation" is clear and unambiguous; the section is not conditioned upon the owner of the manufacturing or industrial equipment having a particular kind of interest in the underlying real property. Applicability of the section is not limited, as appellant contends it is, to fee ownership or to the holder of an easement, or to lessees. If the manufacturing or industrial equipment is in place upon the property, the section applies.

In *Redevelopment Agency* v. *Diamond Properties,* 271 Cal.App.2d 315 [76 Cal.Rptr. 269], the tenant's lease of condemned property expired many months before condemnation proceedings were commenced, the tenant stayed on for several months on a month-to-month basis and finally stopped paying rent, so that at the time the condemnation action was filed the lessee was a tenant at sufferance. It is said, at page 318: ". . . we are not concerned with a lessee's right to use the premises. It is not a possessory interest for which appellant claims the right to compensation; rather, appel-

---

[1]Code of Civil Procedure section 1248b provides: "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation."

lant claims it had an interest in the property itself by virtue of section 1248b of the Code of Civil Procedure. The two-fold test delineated by that section is whether the equipment is designed for manufacturing or industrial purposes *and* installed for use in a fixed location. When these two conditions are met, such equipment 'shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation.' "

The language of the *Diamond Properties* case has been cited with approval in *City of Los Angeles* v. *Sabatasso*, 3 Cal.App.3d 973 [83 Cal.Rptr. 898], and *Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks.*, 274 Cal.App.2d 142 [78 Cal.Rptr. 923]. The distinction between a tenant at sufferance who places manufacturing or industrial property for use on the land of another and a licensee who makes the same kind of installation, is purely verbal. There is none in substance.

■ We turn to appellant's contention that once it became the fee owner of the property by condemnation proceedings it also succeeded to the owner's rights under the three agreements, including the right to demand that respondent relocate the pipelines at its own expense. A similar argument was made in *Redevelopment Agency* v. *Diamond Properties, supra,* and we said, at pages 320-321: "The ownership *interest* in the property, or the right to be compensated as contrasted with the value or amount of compensation, is controlled by section 1249.1, that is, the time summons issues. [Citations.]

". . . In short, can the condemner assert the landlord's right to require the tenant to remove the equipment? Since section 1249.1 governs the time for determining the interest of a condemnee, logically it follows that respondent-condemner cannot, by acquiring fee title to the property after issuance of summons, deprive appellant of its compensable interest established by sections 1249.1 and 1248b." (See *City of Los Angeles* v. *Allen's Grocery Co.*, 265 Cal.App.2d 274 [71 Cal.Rptr. 88]; *City of Los Angeles* v. *Sabatasso, supra,* 3 Cal.App.3d at pp. 978-979; *Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* 274 Cal.App.2d at p. 148.)

Thus appellant cannot step into the shoes of the fee owner insofar as the relationship between the parties to the pipeline agreements is concerned.

■ Finally, appellant contends that the cost of relocating the pipelines, or $121,000, is an incorrect measure of damages, even though that is the agreed cost of relocation. Its theory seems to be that the cost of relocation constitutes severance damages, which it contends are not recoverable in this case. Appellant appears to suggest that the damages must be predicated

upon the value of the pipelines in place at the time of condemnation, similar to a determination of the value of a parcel of condemned real property. It is difficult to conceive of damages being determined by the value to a willing buyer of a pipeline in place, a pipeline that must be dug up and removed, since the purpose of the condemnation action is to clear way for a canal. Were replacement cost to be the measure of damages, we note that the record refers to an original cost of $1,313,267. In any event, it is our opinion that severance damages are allowable in appropriate cases, under section 1248b of the Code of Civil Procedure. The court, in *City of Los Angeles* v. *Sabatasso, supra,* 3 Cal.App.3d 973, had no difficulty in disposing of a similar argument; it said, at page 981: "There is no reason for limiting the application of section 1248b to the designated equipment when located on the portion of the parcel of real property being taken and thereby excluding such equipment from consideration with respect to the matter of severance damages when located on the portion of the parcel not taken. Apropos is the reasoning of the concurring opinion in *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d 384, 396-397 [153 P.2d 950] (quoted, as hereinabove set forth, in the *Concrete Service Company* case), that the 'decisive consideration is . . . whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking' and that it is 'irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property, but the loss to the owner.' The application of section 1248b to a case involving injury in the nature of severance damages is consonant with the legislative intent in the enactment of that section."

We think the reasoning of the *Sabatasso* case is applicable here.

The judgment is affirmed.

Gargano, J., concurred.

Brown (G. A.), J., deeming himself disqualified, did not participate.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1972.