[Civ. No. 25544.    First Dist., Div. One.    June 19, 1969.]

CONCRETE SERVICE COMPANY, Plaintiff and Appellant,
v. STATE OF CALIFORNIA ex rel. DEPARTMENT
OF PUBLIC WORKS, Defendant and Respondent.

Rogers, Vizzard & Tallett, Vatuone & Maino, John D. Rogers and Robert Vatuone for Plaintiff and Appellant.

Harry S. Fenton, Jack M. Howard, R. Hollis Elliott, William R. Edgar and Lee Tyler for Defendant and Respondent.

ELKINGTON, J.—The question posed on this appeal is whether a condemning authority, desiring to acquire real property for a public use, may avoid payment for personal property consisting of industrial equipment owned by a tenant, which is admittedly part of the realty for purposes of condemnation, by the device of an out-of-court purchase of the landlord-owner's fee followed by the authority's termination of the tenancy and demand for the land ''clear of all improvements.''

Appellant Concrete Service Company (Concrete) filed an action in inverse condemnation against the California Department of Public Works, Division of Highways (Department). The superior court granted summary judgment in favor of the Department. The appeal is from the judgment.

The facts stated in, and reasonably inferrable from, declarations before the superior court follow. Concrete had been a tenant on the land since 1950 under three successive five-year leases. It had constructed on the property a concrete batch plant consisting of buildings, garages, tanks and equipment. By the terms of the lease the plant was the property of Concrete which had the right to remove it at the termination of

the tenancy. In 1965, at the expiration of the third lease, a new lease was prepared but for some reason was never executed by the parties. Under the terms of the third lease Concrete continued on under a month-to-month tenancy.

In March 1966 the Department, by letter, advised Concrete that the demands of a freeway right-of-way required removal of all improvements on the land. Thereafter agents of the Department came upon the property; they requested and received permission of Concrete to appraise its batch plant for the "purpose of condemnation." They appraised the plant at $71,536.50. Later in the year the Department learned that Concrete was occupying the land under the month-to-month tenancy. The Department then began private negotiations with Concrete's landlord, resulting in a sale of the land to the State of California. Thereupon the Department sent to Concrete a "Landlord's Notice of Termination" of the tenancy and demanded delivery of the land free of improvements. Concrete acceded to the demand and cleared the property. No eminent domain action was ever filed by the Department.

█ The batch plant, owned by the tenant Concrete with a right to remove it at the termination of the tenancy, was, as a matter of law, *personal property,* at least as between the parties. (*Teater* v. *Good Hope Dev. Corp.,* 14 Cal.2d 196, 207 [93 P.2d 112]; *R. Barcroft & Sons Co.* v. *Cullen,* 217 Cal. 708, 712 [20 P.2d 665]; *Grupp* v. *Margolis,* 153 Cal.App.2d 500, 503 [314 P.2d 820]; *Jordan* v. *Reynolds,* 108 Cal.App.2d 91, 94 [237 P.2d 1005]; *Bowman* v. *Union Trust Co. of San Diego,* 41 Cal.App.2d 397, 402 [106 P.2d 913]; 35 Am.Jur.2d, Fixtures, §§ 16, 79, pp. 713, 762; 32 Words and Phrases (Perm.Ed.), pp. 490-491, 523-525.)

█ Code of Civil Procedure section 1248b, enacted in 1957, states: "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation." Thus, although it was personal property, Concrete's industrial equipment installed for use in a fixed location must here be deemed part of the realty for purposes of condemnation.

It appears to be conceded that if the Department had in fact exercised its power of eminent domain and commenced a condemnation action against the subject property, by virtue of section 1248b, Concrete would have been entitled to compensation for the "taking" of its batch plant.

The Department, however, argues as follows: "Code of Civil Procedure, § 1248b enacted in 1957 did not create the right of an owner to be compensated for fixtures or improvements. It merely determined that certain industrial equipment would be 'deemed [a] part of the realty' regardless of the method of installation. In any event, by its terms the Code of Civil Procedure, § 1248b, definition applies only 'for the purposes of condemnation.' *That is, the State must first file a condemnation suit. In the instant case no lawsuit was filed by the State.*" (Italics added.)

On July 27, 1966, the California Highway Commission adopted a resolution declaring the "public interest and necessity" required the acquisition of the subject property for highway purposes. (See Sts. & Hy. Code, § 102.) The resolution was conclusive evidence that such property was "necessary therefor." (Sts. & Hy. Code, § 103.) The Department thereby was authorized to "condemn [the property] for State highway purposes, under the provisions of the Code of Civil Procedure relating to eminent domain." (Sts. & Hy. Code, § 102.) Concrete and its landlord were notified that "right-of-way requirements for a portion of freeway Route 280, . . . required the clearing from the right-of-way of all improvements." By virtue of California's Constitution, article I, section 14, the Department was authorized to take immediate possession.

In *Hilltop Properties, Inc.* v. *State of California,* 233 Cal. App.2d 349, 356-357 [43 Cal.Rptr. 605], this court discussed the nature of acts which amount to a "taking" by condemnation. We stated: "It is the general rule that a mere plotting or planning in anticipation of a public improvement is not a taking or damaging of the property affected. [Citations.] In the article on Eminent Domain in American Jurisprudence, *supra,* it is stated that 'In exceptional circumstances, however, as where a city does some unequivocal act evidencing an intention to open a proposed street, parkway, or other contemplated improvement, . . . it is held that the acts amount to a taking in the constitutional sense.' (P. 772.) . . . [¶] In *In re Philadelphia Parkway,* 250 Pa. 257 [95 A. 429], it was held that a plotting or planning of a parkway may, when accompanied by other acts of the municipal authorities, create a situation so unusual and extraordinary as to constitute a taking which will entitle the owner to damages although no ordinance was passed to open such parkway. There the situ-

ation which developed was that at intervals during a period of from 10 to 12 years certain properties in the area of the proposed parkway had been acquired by the city either by condemnation or by purchase, some buildings had been torn down, and some improvements made and work done on parts of the parkway. In holding that property owners were entitled to relief in damages because of the situation in which they had been placed, through no fault or act of their own, while waiting for the city to do something to relieve them from the hardships of the situation, the reviewing court allowed such relief on the basis that the facts warranted an exception to the general rule. The rationale of the holding is that the city's unequivocal acts evidencing an intention to open the parkway, followed by actual work done on the projected street, constituted such exceptional circumstances as to entitle the property owners to compensation.''

In the case at bench the Department unequivocally expressed its intention to take the subject property for freeway purposes. It then appraised the plant's equipment for the "purpose of condemnation." We conclude that the Department acquired the real property in question, not as a result of bargaining in the open market, but rather in the broad exercise of its power to condemn private property for public use. Since the method used in obtaining the property constituted condemnation or its substantial equivalent, it is reasonable that Code of Civil Procedure section 1248b be applied. It follows, as prescribed by that section, that Concrete's fixtures and equipment, although personal property, "shall be deemed a part of the realty for the purpose of condemnation."

Our conclusion is consistent with the policy expressed by Traynor, J., concurring in *House* v. *Los Angeles County Flood Control Dist.*, 25 Cal.2d 384, 396-397 [153 P.2d 950], as follows: "The decisive consideration is . . . whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking. It is irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property but the loss to the owner. . . .''

A contention similar to that made by the Department here

was recently rejected in *Redevelopment Agency* v. *Diamond Properties,* 271 Cal.App.2d 315 [76 Cal.Rptr. 269]. In that case the agency gave notice to the owners and occupants of property that it intended to acquire the property by purchase or condemnation. Diamond Properties was the operator of a meat processing plant within the area proposed to be condemned. It had originally occupied the property under a 10-year lease, but the lease had expired and appellant remained thereafter on a month-to-month basis. The agency filed a complaint, seeking to condemn the property, but later, after negotiations with the owner in fee, agreed to purchase the real property if the owner would give the tenant notice to quit the premises. The tenant was given such a notice to quit and the purchase was made.

At the trial the agency argued that the tenant owned no compensable interest in the subject property, since its right to possession was neither defeated nor interfered with. The trial court agreed, but on appeal the judgment was reversed. The appellate court stated (pp. 318-319) : ''Respondent cites numerous cases, . . . holding that where a tenant completes the term of his tenancy before the condemnor takes possession of the property the tenant has suffered no damage. . . . [ ¶ ] However, the facts of the cited cases are not apposite, for we are not concerned with a lessee's right to use the premises. It is not a possessory interest for which appellant claims the right to compensation ; rather, appellant claims it had an interest in the property itself by virtue of section 1248b of the Code of Civil Procedure. The two-fold test delineated by that section is whether the equipment is designed for manufacturing or industrial purposes *and* installed for use in a fixed location. When these two conditions are met, such equipment 'shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation.' . . . [ ¶ ] '. . . Where the tenant owns personal property that measures up to section 1248b, such personal property being ''deemed a part of the realty,'' he has a compensable interest in the property which is separate and apart from his possessory rights.' ''

The Department relies principally on *Emerson* v. *City of Somerville,* 166 Mass. 115 [44 N.E. 110], *Petry* v. *City & County of Denver,* 123 Colo. 509 [233 P.2d 867], *Davis* v. *City of San Angelo* (Tex.Civ.App.) 376 S.W.2d 949, and *Fort Worth Concrete Co.* v. *State* (Tex.Civ.App.) 416 S.W.2d 518. In each of these cases the city or state acquired real property

and then terminated what was, in effect, a tenancy at will. The courts held that the tenants were properly denied any recovery for their personal property industrial equipment. We find these cases inapposite to the issue before us. *Emerson, Petry* and *Davis* relate to purchases of real property by the respective cities on the open market, unattended by condemnation or threats thereof. It was held in each case that the new owner, the city, could terminate the tenancy without compensating the tenant for industrial equipment owned by him. We note also that the issues in *Petry, Davis* and *Emerson* were unaffected by a statute requiring that industrial equipment installed in a fixed location "shall be deemed a part of the realty for the purposes of condemnation." *Fort Worth Concrete Co., supra,* was a condemnation action. However, the law of Texas provides (416 S.W.2d, p. 522) that in determining the value of the real property being condemned "no consideration should be given to . . . the tenant's personal property on the premises." Such is not the law in California, at least since the enactment of Code of Civil Procedure section 1248b in 1957.

■ The Department's contention that Concrete, by "voluntarily" removing the batch plant, *waived* any claim in inverse condemnation, is without merit. The plant was dismantled and removed as a result of the Department's notice that a freeway required removal of improvements from the land, followed by a "demand" that the land be so cleared. Concrete's compliance cannot reasonably be treated as a waiver of its right to compensation. Waiver always rests on intent; it is the voluntary relinquishment of a known right. (*In re Elsholz,* 228 Cal.App.2d 192, 197 [39 Cal.Rptr. 356].) Here no such intent is shown.

The judgment is reversed.

Molinari, P. J., and Sims, J., concurred.

On July 2, 1969, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied August 13, 1969. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.