[Civ. No. 30518. First Dist., Div. Four. Dec. 27, 1972.]

CONCRETE SERVICE COMPANY, Plaintiff and Appellant, v. THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF PUBLIC WORKS, Defendant and Respondent.

FRANK C. GALLI et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF PUBLIC WORKS, Defendant and Respondent.

(Consolidated Cases.)

**COUNSEL**

Rogers, Vizzard & Tallett, Robert Vatuone, Roger L. Maino, Robidoux, Hamer & Maino, Eustice, Feeley & Maguire, W. Gordon Eustice and John D. Rogers for Plaintiffs and Appellants.

Harry S. Fenton, John P. Horgan, Lee Tyler, William R. Edgar and Donald M. Velasco for Defendant and Respondent.

**OPINION**

**DEVINE, P. J.**—In an earlier appeal from a judgment in inverse condemnation, plaintiff was held to have a compensable interest in improvements, equipment and machinery located on the taken land. (*Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks.,* 274 Cal.App.2d 142 [78 Cal.Rptr. 923].) On remand, the trial court held that appellant was entitled only to the removal value of its property, a concrete batch plant. It was stipulated that the removal value was zero.

Concrete installed its plant in 1950 on land owned by Galli. It held a five-year, and later a ten-year, lease, but under both it could be compelled to remove its plant at the termination of the tenancy. Prior to the expiration of the second lease in April of 1965, both Galli and Concrete

had full knowledge that the premises were located in the path of the proposed freeway, and would be condemned. Galli would have renewed the lease but for his knowledge of the condemnation. Instead, Galli entered into a month-to-month tenancy with Concrete. But Concrete refused to sign a lease proffered by Galli under which it would not be entitled to apportionment of condemnation damages.

An agent of the state appraised the batch plant at $71,536.50, but later the state decided that Concrete had no indemnifiable interest. Galli's fee was bought for $50,073 by the state. Galli testified that he assumed that the state would pay Concrete for the value of the improvements. He settled for his valuation of bare land. Landlord's notice to move was served on Concrete by the state. Concrete vacated the property. On the first appeal, the department argued that the state had not filed any condemnation action, but had negotiated for and bought the lessor's interest, and thereafter, as owner, had terminated the tenant's interest. The court rejected this argument and held that the department had acquired the property not as the result of open bargaining but rather in the broad exercise of its power to condemn private property for public use.

On retrial, the state took the position, with which the court agreed, by the law of the case that Concrete had a compensable interest, but it was not one which justified a valuation "in place" because Concrete's tenancy was by the month. Of course, the reason why the tenancy was not renewed was the very action of the state in proceeding towards condemnation.

The essence of the case is this: Section 1248b of the Code of Civil Procedure provides as follows: "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation." At the time of the actions of the department, which are described in *Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* at page 147, as being substantially equivalent of condemnation, the batch plant stood on the property. It must, therefore, be deemed a part of the realty under the terms of the statute. It must be paid for as a part of the realty. It would be unprofitable to speculate, as was done at various points in the trial and on appeal, what the effect would be if Galli entirely independently of the threatened condemnation had demanded removal of the equipment, and the plant had remained by wrongful inaction of the lessee on the property at a time when the department commenced its movement toward acquisition. The fact is that the plant rightfully remained on the property although on a month-to-

month basis and that it was *part of the realty*. Concrete is not attempting to recover the value of a leasehold interest (a leasehold interest is not "part of the realty"), but is asserting its rights under section 1248b.

This distinction has been made before, in *Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks., supra; Redevelopment Agency* v. *Diamond Properties,* 271 Cal.App.2d 315 [76 Cal.Rptr. 269]; and *City of Los Angeles* v. *Allen's Grocery Co.,* 265 Cal.App.2d 274 [71 Cal.Rptr. 88]; *City of Stockton* v. *Bascou,* 12 Cal.App.3d 983 [91 Cal.Rptr. 223]; *City of Los Angeles* v. *Sabatasso,* 3 Cal.App.3d 973 [83 Cal.Rptr. 898]. But respondent argues that these cases merely hold that the tenant has a compensable interest. They do not say how this interest is to be valued, wherefore, says respondent, it has not been decided in any case that industrial equipment which is on the land on a month-to-month tenancy is to be paid for on the same basis as if the equipment belonged to the owner of the land. Perhaps the cases do not spell this out in the precise form which respondent says is lacking, but they do follow section 1248b and they do hold that the lessee has an interest in the real property over and above his possessory rights although in every one of these, there was no more than a month-to-month tenancy. There would have been no purpose to the emphasis placed by the courts on the substantive rights to compensation created by section 1248b if the compensation were to be gauged by the trifling time of the remaining tenancy. The mountains have not labored to deliver a mouse.

We take note of the thoughtful memorandum of decision of the trial judge in which he expressed the opinion that a condemnee has suffered no loss when he is compensated for an interest that he never had (his leasehold having expired); that no sane buyer would pay for anything but the removal value of these improvements, wherefore, their fair market value must be zero. If it were otherwise, it was reasoned, the state would be paying a pure gratuity to the tenant.

The probable intent of the Legislature in enacting section 1248b, the judge said, was that which was thought "apparently" to be the design by a notewriter in 32 State Bar Journal 563; that is, to require compensation to the *owner* (presumably, though the note does not say so, only of the land itself) whether or not industrial equipment was installed or affixed to the land. The author of the note was of the opinion that section 1248b (again "apparently") was intended to abrogate in so far as industrial equipment is involved the tests of manner of installation and nature of the property for determining what are compensable fixtures as those tests were set forth in *Gosliner* v. *Briones,* 187 Cal. 557 [204 P. 19] and *City of Los Angeles* v. *Klinker,* 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148].

But the courts in the cases cited above have construed section 1248b as applying not only to equipment placed on the property by the landowner, but also to that so placed by a tenant, and have construed it as applying to the equipment as *realty,* thus following literally the statute. To follow this statute literally is not to act unreasonably, nor to provide the tenant with a gratuity. For although as between the landlord, Galli and the tenant, Concrete, the legal tenancy was brief, it is to be remembered that the relationship between these two is distinct from the involuntary one which the tenant bears to the condemner. *(Redevelopment Agency* v. *Diamond Properties,* 271 Cal.App.2d 315, 319 [76 Cal.Rptr. 269].) It was the condemner who, splitting, in effect, what the statute has made realty, assumed the role of landlord. Had this not happened, the realities of the situation in this case, (and probably in many others) were that the very fact that heavy equipment was lodged on land the highest and best use of which was industrial would have been a strong factor towards producing renewal of a long term lease. As Galli testified, the lessee's roots are deep because he cannot move off too readily, so the lessor can "demand a little more rent than he could for someone who could easily vacate the premises" and that Concrete had been an excellent tenant.

This is not to say that the statute section 1248b or one like it, had to be enacted in order to comply with constitutional requirements, but that, having been enacted, it does not offend reason nor does it effectuate a gift to the tenant.

It may be that no sane buyer would buy the land, including a valuation for the plant during the uncertain period when the state purportedly had divided the realty into two elements; but had there been no acts or decisions made under the pressure of impending condemnation, someone interested in acquiring a concrete batch plant might have paid a substantial sum. Again, we but answer objections to the literal following of the statute (a procedure allowable only when literal construction would lead to absurdity and another meaning can be drawn from the words).

Respondent relies on *El Monte School Dist.* v. *Wilkins,* 177 Cal.App.2d 47 [1 Cal.Rptr. 715], in which it was held that the fact that a lease may be terminated on short notice is a factor which must be taken into consideration in determining the value of the tenant's interest for valuation in eminent domain proceedings. But the tenants by the month in *El Monte* did not own real property, made so by provisions of Code of Civil Procedure, section 1248b. Their tenancies were of houses and not of equipment designed for manufacturing or industrial purposes.

Respondent cites *People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.*, 253 Cal.App.2d 870 [62 Cal.Rptr. 320], for the proposition that condemned property is to be valued according to the "aggregate of the separate interests" principle rather than by the "undivided fee" method. In the *Lynbar* case, this principle was employed by way of compensating the lessor for the enhanced value of his property which resulted from an extremely favorable lease which he had made to an oil company for a service station. Section 1248b of the Code of Civil Procedure did not enter the case at all. By virtue of that section, there is no separation between land and the industrial improvements; they are one. *City of Beverly Hills* v. *Albright,* 184 Cal.App.2d 562 [7 Cal.Rptr. 706] is also inapplicable; section 1248b was not in the case.

Appellant suggests that the trial court be directed to accept the valuation placed on the property by the appraiser, referred to above, prior to the dispute, but the trial court has not accepted this or any other valuation except the one based upon the theory that the lessee is entitled to no more than the move-off value.

The judgment is reversed, with directions to the trial court to proceed in accordance with the views expressed in this opinion.

Rattigan, J., and Bray, J.,* concurred.

A petition for a rehearing was denied January 19, 1973, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied March 2, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.