[No. H000546. Sixth Dist. May 21, 1986.]

DWIGHT LANNING, Plaintiff and Appellant, v.
CITY OF MONTEREY et al., Defendants and Respondents.

**COUNSEL**

Robert J. Ernst III for Plaintiff and Appellant.

William C. Marsh, City Attorney, Larry W. Telford, Madeleine E. Sloane and Nancy Zellerbach for Defendants and Respondents.

**OPINION**

**AGLIANO, P. J.**—Plaintiff, Dwight Lanning, appeals from that part of the judgment of the Monterey County Superior Court which determined that neither the City of Monterey nor Southern Pacific Land Company was liable to plaintiff on the theory of inverse condemnation, the court finding there had been no "taking" of plaintiff's property. We reverse the judgment.

*Facts*

On June 17, 1982, the Southern Pacific Land Company sold to the City of Monterey (City) its railroad right of way and track structure extending from Roberts Lake in Seaside to the Southern Pacific station in Monterey. The City acquired the land for a transportation corridor including a pedestrian and bicycle trail. The sale followed negotiations covering a period of many months, and as found by the court, was conducted in lieu of the city's exercise of its power of eminent domain to acquire the property. The City expressly acquired the property subject to existing leases. The consideration paid to Southern Pacific covered the fee and track structure and did not purport to pay for any lessee-owned improvements.

Plaintiff was the lessee of a portion of this land, having been in possession of it since 1965 when he signed a five-year lease with a five-year option. He shortly thereafter constructed a concrete building, parking area, fencing and other improvements on the property. Plaintiff, however, did not exercise his option to renew and in 1970 he entered into a new lease with Southern Pacific which allowed either party to terminate upon notice of six months. The lease further provided that: (1) in the event the premises were condemned lessee would receive any compensation due for the taking or destruction of his improvements, and (2) lessee had the right to remove and retain any buildings or structures owned by lessee. This lease was in effect when the City took title on June 28, 1982. On October 25, 1983, the City delivered plaintiff notice to quit in six months. Plaintiff filed the instant action on December 5, 1983. Although the City extended plaintiff's time to move to May 25, 1984, plaintiff has continued in possession at least until the time of trial.

*Discussion*

Plaintiff contends that City should not be permitted to disguise as a private purchase an acquisition which is in reality an act of condemnation and that a tenant of condemned property is entitled to the compensation provided

by law, specifically, compensation for the value of the improvements on the property as provided by section 1263.210 of the Code of Civil Procedure.

City contends that it should be permitted to purchase property on the open market in the same fashion as a private person or entity. Such a transaction does not affect the lease but the purchaser simply becomes the landlord. That, City contends, is what occurred in this case, and there was neither the threat nor exercise of eminent domain.

The trial court filed a "Tentative Decision" on November 20, 1984, and a clarification on January 14, 1985. The parties appear to have treated the two as the court's statement of decision upon which judgment was entered on February 15, 1985.

In its decision the court found "the sale of the property to the city was made in lieu of condemnation and was substantially equivalent to condemnation, therefore, paragraph number 22 of the lease between plaintiff and Southern Pacific Land Company becomes relevant. [¶] Paragraph number 22 provides: '. . . the lessee shall receive compensation only for the *taking* or damaging of lessee's improvements.' When the property was purchased by the city, plaintiff's property was not *taken* from him. He continued as a lessee, subject to a six month termination notice. Such notice was subsequently given him and six months has elapsed. Plaintiff's difficulty is not a result of condemnation activity, rather, it is attributable to his being the holder of a short-term lease." (Italics in original.)

Following a motion for reconsideration the court filed a clarification of the decision which stated in relevant part: "Southern Pacific's sale of the land to the City of Monterey was motivated by the threat of condemnation, and to that extent was made in lieu of condemnation. . . . However, paragraph #22 requires a *taking* of plaintiff's property interest. This was not done. The city purchased the property subject to plaintiff's property (leasehold) interest." (Italics in original.)

■ The crucial question is whether the law of eminent domain reaches these facts. ■ The rights of the parties in an inverse condemnation action are generally the same as those in an eminent domain proceeding. (*Bacich* v. *Board of Control* (1943) 23 Cal.2d 343 [144 P.2d 818]; *Rose* v. *State of California* (1942) 19 Cal.2d 713 [123 P.2d 505].) ■ The California law of eminent domain provides the measure and mode of compensation for property acquired by eminent domain. (Code Civ. Proc.,

§§ 1263.010-1263.620.) Section 1263.210[1] provides that improvements pertaining to the realty shall be taken into account in determining compensation notwithstanding the right or obligation of a tenant, as against the owner of any other interest in real property, to remove such improvement at the expiration of his term.

The trial court's finding that the sale was the equivalent of condemnation is most significant because the tenant's right to compensation for his improvements on the property does not necessarily depend on the City's actual exercise of its power of eminent domain. Its substantial equivalent serves the same purpose. (*Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1969) 274 Cal.App.2d 142, 147 [78 Cal.Rptr. 923].)

In *Concrete Services,* the California Department of Public Works (Department) desired to acquire certain property for a freeway right of way. Agents of the Department appraised improvements on the land for purposes of condemnation but when they discovered that the improvements were owned by a tenant occupying the land on a month-to-month tenancy the Department began negotiations with the landlord which concluded with sale of the land to the State of California (State). The Department thereupon gave the tenant notice of termination of the month-to-month tenancy together with a demand for delivery of the land free of the improvements.

The tenant responded with an action in inverse condemnation claiming compensation for the value of the improvements pursuant to former section 1248b, of the Code of Civil Procedure. Section 1248b, to the same effect as its successor sections 1263.205 and 1263.210, provided that "[e]quipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation." (Stats. 1957, ch. 1098, § 1, p. 2404.) The State apparently conceded that compensation would have been due the plaintiff if the State had in fact exercised its power of eminent domain and commenced a condemnation action to acquire the property. (*Id.,* at p. 145.) However, the State argued the statute was inapplicable since an action to condemn the property had not been commenced. The Court of Appeal disagreed, stating: "In the case at bench the Department unequivocally expressed its intention to take the subject property for freeway purposes. It then appraised the plant's equipment for the 'purpose of condemnation.' We conclude that the Department acquired the real property in

---

[1]Code of Civil Procedure section 1263.210 provides: "(a) Except as otherwise provided by statute, all improvements pertaining to the realty shall be taken into account in determining compensation. [¶] (b) Subdivision (a) applies notwithstanding the right or obligation of a tenant, as against the owner of any other interest in real property, to remove such improvement at the expiration of his term."

question, not as a result of bargaining in the open market, but rather in the broad exercise of its power to condemn private property for public use. Since the method used in obtaining the property constituted condemnation or its substantial equivalent, it is reasonable that Code of Civil Procedure section 1248b be applied. It follows, as prescribed by that section, that Concrete's fixtures and equipment, although personal property, 'shall be deemed a part of the realty for the purpose of condemnation.'" (*Id.*, at p. 147.)

The trial court in the instant case, while finding that the City's acquisition of the subject property was the equivalent of acquisition by eminent domain, nevertheless determined that no compensation was due plaintiff. The court concluded that since City had agreed to acquire the property subject to plaintiff's lease, the lease was short, and plaintiff remained in possession for as long as he was entitled to under the lease, plaintiff's property was not "taken" in the constitutional sense.

The length of the lease and lessee's continued possession following acquisition by the governmental agency, however, are not relevant to resolution of the issue. Somewhat similar circumstances were presented to the court in *Redevelopment Agency* v. *Diamond Properties* (1969) 271 Cal.App.2d 315 [76 Cal.Rptr. 269]. There, the condemning agency filed an action in eminent domain seeking to condemn certain land and equipment the latter owned by a tenant in possession under a month-to-month lease. The agency then purchased the fee at an agreed price after inducing the owner to deliver notice of termination of the month-to-month tenancy. The trial court decided no compensation for the equipment was due since the tenant had possession under a mere month-to-month tenancy which had been fulfilled many times over before notice of termination, and the tenant remained in possession six months following termination as a tenant at sufferance without paying rent. Therefore the tenant's leasehold interest in the condemned property was neither defeated nor interfered with by the condemnation action.

The Court of Appeal reversed, saying at page 318: "[F]or we are not concerned with a lessee's right to use the premises. It is not a possessory interest for which appellant claims the right to compensation; rather, appellant claims it had an interest in the property itself by virtue of section 1248b of the Code of Civil Procedure." "Where the tenant owns personal property that measures up to section 1248b, such personal property being 'deemed a part of the realty,' he has a compensable interest in the property which is separate and apart from his possessory rights. [¶] A number of cases hold that even though a lessee has a right or a duty under his lease to remove fixtures permanently attached to the property being condemned,

insofar as the condemner is concerned the lessee is a condemnee as to his personal property that is permanently attached to the lessor's real property. [Citations.]" (*Id.,* at p. 319.)

Not every purchase of property by an agency having the power of eminent domain is an acquisition in lieu, or the substantial equivalent, of condemnation, entitling a tenant to compensation for the value of his improvements. In *Pacific Outdoor Advertising Co.* v. *City of Burbank* (1978) 86 Cal.App.3d 5 [149 Cal.Rptr. 906], the City negotiated for and leased certain property from Southern Pacific Company for the purpose of providing off-street parking and beautification. The property contained outdoor advertising signs which had been erected by Pacific Outdoor Advertising Company under two agreements with Southern Pacific. Since these signs would interfere with the City's contemplated use of the property, Southern Pacific terminated the advertising company's licenses with resultant removal of the signs.

Pacific Outdoor Advertising brought an action in inverse condemnation. The evidence at trial disclosed that Southern Pacific had terminated its agreements with the sign company to further its own interests through a more advantageous lease with the City; that the entire transaction between Southern Pacific and the City was an "open market transaction" in that the City had never threatened to institute condemnation proceedings to acquire the property. (*Id.,* at pp. 8-9.) On appeal the court distinguished *Concrete Services Co.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* 274 Cal.App.2d 142, and *Redevelopment Agency* v. *Diamond Properties, supra,* 271 Cal.App.2d 315, reasoning that in each there was a "definite and unequivocal manifestation that the public entity in question was ready to use its power to condemn, and in fact would clearly do so if necessary, to acquire the property at issue." (*Pacific Outdoor Advertising Co.* v. *City of Burbank, supra,* 86 Cal.App.3d at p. 11.) The court further stated: "The mere fact that respondent has the power of eminent domain, when in fact such power is neither exercised nor remotely threatened, is insufficient to render it liable in an inverse condemnation action every time it deals in an open market transaction which results in leases or licenses being broken. The 'power to condemn' cannot in and of itself constitute proximate cause where there is an intervening force or factor. In an open market transaction the 'power to condemn' is not enough—there must be evidence of implied or actual threat of condemnation, so that the ultimate result is a foregone conclusion." (*Id.,* at p. 12.)

We are confronted in the instant case with the trial court's explicit finding that the acquisition by City of the subject property was the essential equivalent of its exercise of eminent domain. The finding is amply supported by evidence that the City and the railroad expressly agreed in their sales

agreement that such was the case and by the testimony of Southern Pacific's manager of real estate wherein he stated "I would just like to say that this land was not for sale. As a matter of fact, it had been the intent of our real estate operation, if you will, to come in and try and subdivide that property, and make long-term leases, or whatever. So the land was really taken away from us: we did not want to sell it."

■ In light of the trial court's finding and the evidence in support of it we can only conclude that the City's acquisition of the subject property was not on the open market but under circumstances which bring into play the compensation requirements of eminent domain law.

It may at first glance appear that the tenant reaps a windfall. After all he might just as easily have been evicted, improvement and all, by his landlord with no right except to remove the building at his own expense. The short answer may simply be that the Legislature has ordained the payment of compensation in such cases. However, the result is not unreasonable nor does it involve a gift. Although the lease is short-term, the presence of substantial tenant-owned improvements on the land creates a relationship in which landlord and tenant have mutual economic motives to continue the lease. (See *Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1972) 29 Cal.App.3d 664, 668 [105 Cal.Rptr. 721].) The condemner's forced acquisition will inevitably frustrate the tenant's expectations as to the economic value of the improvements constructed on the land. Thus, it would be illusory to hold that the lessee's rights continue undiminished. (See also *Almota Farmers Elevator & Whse. Co.* v. *U.S.* (1973) 409 U.S. 470, 473-475 [35 L.Ed.2d 1, 7-8, 93 S.Ct. 791].) It is for this reason, we surmise, the Legislature has provided that "[w]here all the property subject to a lease is acquired for public use, the lease terminates." (Code Civ. Proc., § 1265.110.)

We hold, in conclusion, that since the subject property was in essence acquired by the City in the exercise of its power of eminent domain and since the tenant's improvements are to be taken into account in determining compensation (Code Civ. Proc., § 1263.210) plaintiff is entitled to compensation for his building, the duration of the lease notwithstanding. (*Concrete Service Co., supra,* 29 Cal.App.3d at p. 667.)[2]

We leave to the trial court's determination whether Southern Pacific should remain a party. The compensation ostensibly received by it included nothing for tenant improvements. If that is the case there is no apparent basis for Southern Pacific's liability to plaintiff.

---

[2]We express no opinion, however, as to the amount of such compensation or as to the City's right to set-off for any rents due for plaintiff's occupancy of the premises.

The judgment is reversed with directions that the trial court proceed in a manner consistent with the views expressed herein.

Brauer, J., and Chang, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.