[No. H018153. Sixth Dist. Feb. 10, 1999.]

MARK LANGER et al., Plaintiffs and Appellants, v.
REDEVELOPMENT AGENCY OF THE CITY OF SANTA CRUZ,
Defendant and Respondent.

COUNSEL

Reid P. Schantz; and Michael A. Atherton for Plaintiffs and Appellants.

Atchison & Barione and Antony P. Condotti for Defendant and Respondent.

Goldfarb & Lipman, Lee C. Rosenthal and David M. Robinson for California Redevelopment Association as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—In this inverse condemnation action, two commercial tenants appeal from a summary judgment in favor of the Redevelopment Agency of the City of Santa Cruz (the Agency).[1] Appellants sought compensation for business goodwill and improvements lost when they were evicted from the properties they were renting and the land became part of a large-scale commercial development funded in part by the Agency. We find that there was no taking of the properties by the Agency, either by actual condemnation or its substantial equivalent. Consequently, appellants are not entitled to compensation for goodwill and improvements under eminent domain law. (Code Civ. Proc., §§ 1263.510, 1263.205.) We will affirm the summary judgment.

BACKGROUND

Charles Scherer owned 3 parcels of real property which together comprised 3.74 acres of a 10-acre area in the City of Santa Cruz (City) known as the Gateway Project site. The Gateway Project site consisted of approximately 20 irregularly shaped parcels, including Scherer's 3 parcels, which were dedicated to various commercial and light-industrial uses. Its location on the edge of town at the intersection of two main thoroughfares made it well suited for an integrated commercial development. Scherer contemplated the eventual development of his property together with the surrounding parcels in the area, and for this reason he had not maintained any formal long-term leases with his tenants, who rented from him under month-to-month tenancies.

The Gateway Project site had been declared a blighted area and was thus eligible for Agency funding. It was part of a larger area known as the

---

[1]The appeal as to a third tenant, James Reber, doing business as Reber Construction, was dismissed by order dated January 8, 1999.

"Merged Project Area," which was identified in the City's "Amended Redevelopment Plan for the Merged Earthquake Recovery and Reconstruction Project." The entire Merged Project Area was within the jurisdiction of the Agency. Consequently, the Agency was authorized to acquire real property within this area through the eminent domain process.

In the late 1980's, Scherer began working with Cypress Properties, Inc. (Cypress), to plan a commercial development for the Gateway Project site. Scherer's 3.74 acres was a major piece of the 10-acre site. The project was envisioned as a commercial hub consisting of a few anchor tenants and several other smaller retail outlets. Cypress and Scherer approached the Agency and elicited its assistance and cooperation in pursuit of the project. In January of 1994, John DeBenedetti of Cypress wrote to the director of the Agency regarding plans to develop the Gateway Project site as the "Designated Developer." He stated that it was possible that Cypress "could accomplish the project without extensive involvement by the Agency." This was largely because Cypress already had a joint venture agreement with Scherer regarding his properties, which comprised 162,000 square feet of the total net useable 410,000 square feet of the project site. Therefore, Cypress would not need Agency assistance in acquiring these properties through the eminent domain process.

In 1994, Cypress entered into an "Exclusive Negotiation Agreement" (ENA) with the Agency wherein Cypress and the Agency agreed to negotiate to prepare a development agreement regarding the Gateway Project. As a result of these negotiations, an "Owner Participation Agreement" was entered into on September 10, 1996, and various amendments were signed in the months thereafter. These agreements defined the respective involvement of Cypress and the Agency in the development of the Gateway Project. Scherer was not a party to these owner participation agreements.

The participation agreements spelled out that the project area was comprised of properties owned or controlled by Cypress, which included Scherer's three parcels; property owned by the City; a right-of-way owned by the California Department of Transportation; and other privately owned parcels, designated "the Acquisition Parcels," which were to be acquired by the Agency for conveyance to Cypress. The Agency's acquisition activities were therefore limited to acquiring parcels "which Cypress does not already own or is unable to acquire." As to Scherer's parcels, it was understood that when the plans for the project were approved those parcels would be made available free and clear of any tenancies.

In November of 1996, Scherer wrote to appellants, giving formal notice that he was terminating their month-to-month tenancies. Unlawful detainer

actions were commenced against them on March 5, 1997.[2] The municipal court granted judgment in unlawful detainer on March 19, 1997. The Agency was not a party to the unlawful detainer proceedings.

The same day judgment was rendered in the unlawful detainer actions, appellants filed their complaint for inverse condemnation and relocation benefits against Scherer's estate, Cypress and the Agency. They alleged that Scherer, Cypress and the Agency had acted together to take the properties where their businesses were located and that as a result they were entitled to just compensation for the loss of business goodwill and improvements. (Code Civ. Proc., §§ 1263.510, 1263.205.) They also alleged that they were entitled to relocation assistance and/or benefits. (Gov. Code, § 7260.) The claim for relocation assistance is not at issue here as appellants have received some relocation assistance and are pursuing separate administrative remedies for relocation benefits under Government Code section 7260. Furthermore, Cypress and the estate of Scherer have been dismissed from the action. Thus the only cause of action remaining is for inverse condemnation against the Agency.

On December 5, 1997, the Agency filed its motion for summary judgment on the ground that no inverse condemnation action was available to appellants because the property was neither taken nor damaged by the Agency. The court granted summary judgment January 12, 1998, and filed its written decision February 5, 1998.

### DISCUSSION

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203]; Code Civ. Proc., § 437c.) First, we identify the issues framed by the pleadings. Second, we determine whether the moving party's showing has negated the opponent's claim, justifying a judgment in movant's favor. If so, the third and final step is to determine whether the opposition has demonstrated the existence of a triable, material factual issue. (*Ibid.*)

Here appellants alleged in their complaint that the Agency was a public agency and that it participated, together with Cypress and Scherer, in assembling property in the Gateway Project area for the redevelopment project known as the Gateway Project. They alleged that pursuant to plans

---

[2]Scherer passed away in January of 1997. These unlawful detainer actions were initiated by a representative of his estate.

for this project, the structures to be demolished included the buildings housing their respective businesses. They further alleged that Scherer, through Cypress, had an agreement with the Agency for the assemblage of the properties, the demolition of existing improvements and the subsequent redevelopment of the property. Therefore, the dispossession of appellants by Scherer amounted to a taking of their property by the Agency, entitling them under the law to just compensation for improvements and goodwill.

Under Code of Civil Procedure section 1263.205, an owner of any " 'improvements pertaining to the realty' " on property taken by eminent domain, which cannot be removed without substantial economic loss, is entitled to compensation for the value of such improvements. The code further provides that the owner of a business conducted on property taken shall be compensated for the loss of goodwill, provided that "[t]he loss is caused by the taking of the property . . . ." (Code Civ. Proc., § 1263.510, subd. (a)(1).) The same rules apply to suits in inverse condemnation. (*Chhour* v. *Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 280 [53 Cal.Rptr.2d 585].)

The parties agree that the facts as summarized above are undisputed. The Agency's declarations establish that the Agency itself did not initiate or directly threaten to initiate condemnation proceedings regarding the Scherer parcels and did not ever acquire an interest in those parcels of real property. ▊▊ Under prevailing case law, however, "the tenant's right to compensation for his improvements on the property does not necessarily depend on the [public agency's] *actual* exercise of its power of eminent domain. Its *substantial equivalent* serves the same purpose." (*Lanning* v. *City of Monterey* (1986) 181 Cal.App.3d 352, 356 [226 Cal.Rptr. 258] (*Lanning*), italics added; *Concrete Service Co.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1969) 274 Cal.App.2d 142, 147 [78 Cal.Rptr. 923] (*Concrete Service*).) The key issue is whether under the particular circumstances the property in question was acquired as part of an open market transaction or whether its acquisition was in lieu of, or the substantial equivalent of, a condemnation proceeding. (*Pacific Outdoor Advertising Co.* v. *City of Burbank* (1978) 86 Cal.App.3d 5 [149 Cal.Rptr. 906] (*Pacific*); *Lanning, supra,* 181 Cal.App.3d 352.)

Several cases illustrate these principles. In *Concrete Service, supra,* 274 Cal.App.2d 142, the court posed the question whether a condemning authority, desiring to acquire real property for a public use, may avoid its statutory obligation to compensate the commercial tenant for personal property which is part of the realty by means of purchasing the landlord's fee and then terminating the tenancy. In *Concrete Service* a proposed freeway right-of-way required the removal of improvements constructed by a commercial

tenant. The agency proceeded to appraise the improvements for purposes of condemnation; however, upon discovering that the tenancy was month-to-month, the agency commenced private negotiations with the landlord which culminated in the sale of the land to the agency. Taking on the role of the landlord, the agency then terminated the tenancy and demanded the land free of improvements. The tenant filed an inverse condemnation action claiming compensation for the improvements.

The court agreed that the agency was liable, reasoning that if the agency had exercised its power of eminent domain as it had intended to do, the tenant would have been entitled to compensation for the taking of its improvements. Since the agency had to acquire the property for highway purposes, and gave notice to both the tenant and the landlord of its intent to condemn, its subsequent private purchase from the owner and termination of the tenancy constituted the "substantial equivalent" of condemnation. (*Concrete Service, supra,* 274 Cal.App.2d at p. 147.) The court concluded that the agency "acquired the real property in question, not as a result of bargaining in the open market, but rather in the broad exercise of its power to condemn private property for public use." (*Ibid.*)

Similarly in *Redevelopment Agency* v. *Diamond Properties* (1969) 271 Cal.App.2d 315 [76 Cal.Rptr. 269] (*Diamond Properties*), the agency gave notice to the owners and occupants that it intended to acquire the property by purchase or condemnation. The agency actually filed a condemnation action but dismissed it after negotiating with the owner of the property and completing a private purchase which was conditioned on the owner's giving notice to the tenants of the termination of their tenancy. The court found that under these facts the agency must compensate the tenant for improvements it had constructed on the rented property.

In *Lanning, supra,* 181 Cal.App.3d 352, this court relied on *Concrete Service* and *Diamond Properties* in finding that the purchase of property by the City of Monterey was the substantial equivalent of condemnation. In *Lanning,* the city purchased property from Southern Pacific Land after several months of negotiations. A portion of the land purchased was subject to an existing lease and the lessee had constructed improvements on it. The lease provided that the lessee would receive compensation for the loss of his improvements in the event the property was condemned. The trial court found that the private sale to the city had been " 'motivated by the threat of condemnation, and to that extent was made in lieu of condemnation.' " (*Lanning, supra,* 181 Cal.App.3d at p. 355.) However, the trial court concluded that since the property had not actually been condemned, the tenant was not entitled to the compensation provided by law and under the lease.

This court reversed. Since the facts as found by the trial court in *Lanning* amounted to the substantial equivalent of condemnation, the tenant was entitled to compensation even though the city did not actually exercise its power of condemnation. We noted, however, that "[n]ot every purchase of property by an agency having the power of eminent domain is an acquisition in lieu, or the substantial equivalent, of condemnation, entitling a tenant to compensation for the value of his improvements." (181 Cal.App.3d at p. 358.) This depends upon whether under all of the circumstances the property was purchased in an open market transaction or under threat of condemnation.

In *Pacific, supra,* 86 Cal.App.3d 5, the court found the acquisition of property by the city was an open market transaction. In that case, Pacific Outdoor Advertising had licensing agreements with the railroad to erect and maintain several billboards on the railroad's right of way. The city became interested in leasing some of the railroad's property for purposes of beautification and providing parking. The city and the railroad entered into a lease agreement for property owned by the railroad including the right of way where Pacific's signs were located. The lease agreement included a provision that the railroad would terminate the agreements with Pacific regarding the billboards and accordingly the railroad gave notice to Pacific and canceled Pacific's licenses. Pacific sought damages in inverse condemnation against the city, on the basis that the city had essentially caused the railroad to terminate Pacific's licenses. Pacific relied on *Concrete Service* and *Diamond Properties* in arguing that even though the city had not exercised its condemnation authority, the fact that it could have condemned the property in question was sufficient to support an action in inverse condemnation.

The Court of Appeal in *Pacific* rejected this argument. The court found that the facts showed that the railroad and the city had engaged in an open market transaction. A lease with the city was of greater financial benefit to the railroad than its licenses with Pacific. The city never threatened or even mentioned condemnation. The railroad had acted freely in its own interest. The court concluded that "[t]he mere fact that [the city] has the power of eminent domain, when in fact such power is neither exercised nor remotely threatened, is insufficient to render it liable in an inverse condemnation action every time it deals in an open market transaction which results in leases or licenses being broken. The 'power to condemn' cannot in and of itself constitute proximate cause where there is an intervening force or factor. In an open market transaction the 'power to condemn' is not enough—there must be evidence of implied or actual threat of condemnation, so that the ultimate result is a foregone conclusion." (*Pacific, supra,* 86 Cal.App.3d at p. 12.)

■ Applying this case law to the undisputed facts before us, we find there was no substantial equivalent of condemnation here. Appellants contend the evidence shows that the Agency "orchestrated" the termination of the leases, similar to the circumstances in *Diamond Properties*, where the public agency privately purchased the property on the condition that the owner terminate the tenancies. *Diamond Properties* is quite different, however. In that case it was clear that the public entity intended to use its power of condemnation and in fact actually filed a condemnation action, which it later dismissed. The private purchase by the entity, conditioned on delivery of the property free of tenancies, was therefore clearly in lieu of condemnation.

Here, on the other hand, the evidence shows that the plans for developing the properties were initiated by Cypress and Scherer, who sought assistance from the Agency in acquiring other properties in the area. The Agency never acquired the Scherer properties. Unlike *Concrete Service*, *Diamond Properties* and *Lanning*, there was no notice of condemnation nor any threat of condemnation of the Scherer properties, nor any evidence that the Agency intended to condemn those properties for redevelopment of the area. Indeed, in all of the owner participation agreements, the Scherer properties were in the group of parcels which were already under the control of Cypress and thus did not require acquisition by the Agency.

Appellants argue that Scherer's notice to them of the termination of their tenancies tends to show that Scherer was acting for, or was coerced by, the Agency. We disagree. In his letter to appellants, Scherer wrote: "You have known for some time that my property was in a redevelopment area and that it would be developed one day. Through a very long process with the Redevelopment Agency, the property is finally in a position to be developed. [¶] As you know I am contributing my property to a joint venture with Cypress Properties. In accordance with my agreement with Cypress and the Redevelopment Agency, I agreed to free the land of all tenancies and occupants." The letter explains that Scherer is contributing his property to the project as a joint venturer with Cypress. Although the letter speaks of an agreement with Cypress *and* "the Redevelopment Agency," the ENA and owner participation agreements in the record clearly show that the only parties to the agreement were the Agency and Cypress, as the designated developer. Scherer's letter of termination does not amount to "evidence of [an] implied or actual threat of condemnation, so that the ultimate result is a foregone conclusion." (*Pacific, supra*, 86 Cal.App.3d at p. 12.) From the beginning of the negotiations, the Scherer parcels were specifically identified among those parcels which Cypress already owned or controlled, and thus the Agency did not need to acquire.

In the termination notice, Scherer also enclosed a form requesting that the tenants waive relocation benefits. In a declaration by one of the tenants, Fredric Freiberg, he states that he called Scherer and Scherer told him *"they had me do this for legal purposes."* (Italics added.) "They," according to the declaration, were the developer (Cypress) and the Agency. In context, however, it appears Scherer was referring to the inclusion of the forms soliciting waiver of relocation benefits, and not to any coercion regarding the termination of the tenancies.

Appellants point to evidence showing the Agency was involved in the attempt to secure a waiver of their relocation benefits. The waiver forms included in Scherer's notice of termination were addressed to the Agency. Following Scherer's death in January of 1997, Cypress communicated with appellants and offered them certain sums of money in exchange for waiving relocation benefits. The letter from Cypress stated that the offer was made "on behalf of the development entity (which includes the estate of Charles Scherer)." The letter further stated that Cypress would pursue unlawful detainer remedies if appellants did not accept the proposal. Finally, appellants point out that after they filed their action for inverse condemnation damages, the Agency responded by sending a relocation expert to assess their relocation benefits and that the Agency eventually made payments to them for relocation, as well as to the other displaced tenants in the Gateway Project site area. Appellants argue this evidence shows that the Agency was attempting to evade its responsibilities to pay relocation benefits under Government Code section 7260 et seq., and that it used both Scherer and Cypress to help achieve this end.

Even accepting appellants' interpretation of this evidence, however, and acknowledging that the Agency ultimately paid relocation benefits to *all* of the displaced tenants in the area, this does not tend to prove the Agency's liability in inverse condemnation as to these particular properties. Relocation assistance under the Government Code is distinct from condemnation damages under constitutional mandate and the Code of Civil Procedure. Under Government Code section 7260, relocation assistance is available when a person is displaced "[a]s a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part, for a program or project undertaken by a public entity *or by any person having an agreement with or acting on behalf of a public entity.*" (Gov. Code, § 7260, subd. (c)(1)(i), italics added.) It further provides that the definition of displaced person "shall be construed so that persons displaced as a result of public action receive relocation benefits in cases where they are displaced *as a result of an owner participation agreement or an acquisition carried out by a private person for or in connection with a public use where the public entity*

*is otherwise empowered to acquire the property to carry out the public use.*"
(Gov. Code, § 7260, subd. (c)(2), italics added.) There are no similar provisions in the Code of Civil Procedure providing for condemnation damages in similar circumstances. The Relocation Assistance Act thus reaches a broader category of persons, which in this case includes appellants. The fact that the Agency provided relocation assistance to appellants is therefore not proof of the Agency's liability in inverse condemnation.

"[T]o have inverse condemnation, you have to have a taking" (*Pacific, supra,* 86 Cal.App.3d at p. 12, fn. 4.), or at the very least "a definite and unequivocal manifestation that the public entity in question was ready to use its power to condemn, and in fact would clearly do so if necessary, to acquire the property at issue." (*Id.* at p. 11; *Diamond Properties, supra,* 271 Cal.App.2d 315; *Concrete Service, supra,* 274 Cal.App.2d 142.) There is no evidence here that the Agency was prepared to use its power to condemn the Scherer parcels or that Scherer was acting under the threat of condemnation when he gave his tenants notice. Rather, the moving papers demonstrate that this was an open market transaction where Cypress and Scherer initiated a joint venture to develop the Gateway Project site and Cypress, as the designated developer, solicited the assistance of the Agency to acquire properties *other than Scherer's* and to provide funds for site demolition and tenant relocation benefits.

Unlike *Concrete Service, Diamond Properties,* and *Lanning,* where the agency attempted to evade liability for condemnation damages by privately acquiring the property, here there was no acquisition by the public agency of any interest in the Scherer properties. Appellants argue that it is not necessary to an action in inverse condemnation for the public agency to actually acquire a possessory interest in the property. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285 [142 Cal.Rptr. 429, 572 P.2d 43]; *Sutfin v. State of California* (1968) 261 Cal.App.2d 50 [67 Cal.Rptr. 665]; *Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862 [218 Cal.Rptr. 293, 705 P.2d 866].) These cases are distinguishable, however. They involve damage to property, either physical damage through flooding or release of gasses, or nuisance damages caused by noise, smoke and vibrations from airplanes flying over the property. There are no such damages to the properties in this case caused by the public entity. Appellants claim that the demolition of the structures on all of the properties, which was funded by the Agency, evidences a possessory interest in the properties. We disagree. The properties were under the possession and control of Scherer and/or Cypress at all times, including the time development was commenced and structures in the project area were demolished. The fact that funding for demolition was provided by the Agency does not create a triable issue of fact as to the taking or possession of the properties.

Finally, the fact that the Agency had the authority to condemn property in the redevelopment area and indeed used its condemning authority to acquire other parcels in the Gateway Project site for conveyance to Cypress does not give rise to a triable issue regarding the Agency's eminent domain liability as to the Scherer parcels. The adoption of a redevelopment plan which includes the power to condemn falls " 'several leagues short of a firm declaration of an intention to condemn [real] property.' " (*Cambria Spring Co.* v. *City of Pico Rivera* (1985) 171 Cal.App.3d 1080, 1097 [217 Cal.Rptr. 772].) The power to condemn, in and of itself, does not constitute proximate cause where there are intervening factors. (*Pacific, supra,* 86 Cal.App.3d at p. 12.) Here Scherer, the owner of the properties, terminated the tenancies on his properties pursuant to his joint venture agreement with Cypress to develop the Gateway Project and deliver his properties free of tenancies. This was "an intervening force or factor" sufficient to negate inverse condemnation liability on the part of the Agency. (*Ibid.*)

Appellants contend that the result in this case is unfair since the Agency avoids liability for compensation under Code of Civil Procedure sections 1263.510 and 1263.205 as to some parcels in an integrated redevelopment project while paying compensation as to others. As we observed in *Lanning,* it may appear to be an arbitrary result that a tenant whose property is condemned is entitled to compensation under eminent domain law and another tenant who is simply evicted by the landlord has no right to such compensation. However, "the Legislature has ordained the payment of compensation in [the first] case[]" and not in the second. (*Lanning, supra,* 181 Cal.App.3d at p. 359.) As the California Redevelopment Association argues in its amicus curiae brief in this case, if appellants' argument were accepted, a redevelopment agency, which provides a variety of assistance to private projects in a multitude of circumstances, would be open to eminent domain liability in every case that involves a private landlord legally terminating a tenant's occupancy. And as the court stated in *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, 658-659 [130 Cal.Rptr. 230], "[t]he economic ramifications of [a public project] are complex and unbounded. Unless losses caused by the [project] fall within the constitutional meaning of a taking or damage, it is for the Legislature to draw the balance between individual property rights and social needs. (*HFH, Ltd.* v. *Superior Court* [(1975)] 15 Cal.3d 508, 520-523 [125 Cal.Rptr. 365, 542 P.2d 237].)"

It is possible, as appellants suggest, that if the Agency had not agreed to provide assistance, Cypress and Scherer could not have gone forward with the Gateway Project and appellants might not have been evicted when they were. That is not the direct cause and effect contemplated by the eminent

domain statutes, however. A public agency is not liable in inverse condemnation unless the alleged damage arises *directly* from agency acquisition of the property in question or threat of acquisition. (See *Redevelopment Agency v. Tobriner* (1984) 153 Cal.App.3d 367, 376-377 [200 Cal.Rptr. 364]; *Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].) The Legislature clearly limited compensation under Code of Civil Procedure sections 1263.205 and 1263.510 to instances where the public agency has "taken" the property or an interest therein. Here appellants' alleged losses are a consequence of the termination of their month-to-month tenancies by their landlord. The undisputed facts in this case show no taking by the Agency and no substantial equivalent thereof. Consequently appellants are not entitled to compensation under constitutional principles or under statutory eminent domain law.

## DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.